WOODMAN v MIESEL SYSCO FOOD COMPANY

Docket No. 226001. Submitted September 11, 2002, at Detroit. Decided November 26, 2002, at 9:00 A.M. Leave to appeal sought.

James Woodman brought an action in the Wayne Circuit Court against Miesel Sysco Food Service Company and Kenneth Angelosanto, alleging violation of the Family and Medical Leave Act (FMLA), 29 USC 2611 et seq., and other claims as a result of the defendants' termination of his employment on the basis of absenteeism. The plaintiff went to a hospital after experiencing chest pains at work. After he was examined, it was determined that there was no apparent heart damage and he was released. The doctor told the plaintiff not to return to work until a stress test, which was scheduled for ten days later, was performed. When the stress test revealed no heart conditions, the plaintiff was told he could return to work. The court, Robert L. Ziolkowski, J., granted summary disposition in favor of the plaintiff, awarded the plaintiff damages and attorney fees, and ordered that the defendants reinstate the plaintiff to his former job. The defendants appealed. The plaintiff cross appealed, alleging error in the denial of his request for liquidated damages and in the court's determination that the plaintiff was not discharged in retaliation for asserting his rights under the FMLA.

The Court of Appeals held:

1. Where, as in this case, the need for FMLA leave is unforeseeable, the FMLA itself is silent regarding notice requirements. However, regulations implementing the act promulgated by the secretary of labor pursuant to a grant of authority in the FMLA do address the notice requirements.

2. The regulations provide that what is sufficient, both in terms of the timing of the notice and its content, will depend on the facts and circumstances of each individual case. The information imparted to the employer must be sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition. The employer's duties under the FMLA are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave. However, in giving notice, the employee need not expressly assert rights under the FMLA or even mention the FMLA, but need only state that leave is

needed. Once circumstances suggest that an employee may qualify for FMLA leave, the employer has the obligation to inquire further into the matter.

3. An employer may require that an employee's leave be verified by a medical certification issued by the health care provider of the employee. When an employee first gives notice of his need for leave, employers who want such medical certification must give the employee specific, written notice of the requirement and the anticipated consequences for failing to meet the notice requirement. Employers may not take action against an employee for failure to provide medical certification where the employer fails to provide a specific written request for medical certification.

4. When the leave is not foreseeable and advance notice is not possible, the employer must allow at least fifteen days after its request for the employee to provide medical certification.

5. It is a question of fact whether the notice is adequate.

6. The court did not err in concluding that the plaintiff's notice was sufficient as a matter of law to put the defendants on notice that the plaintiff might qualify for FMLA leave.

7. Although the plaintiff failed to comply with the leave provisions of his collective bargaining agreement, the FMLA cannot be diminished by a collective bargaining agreement.

8. An absence from work because of a physician's "no work" order pending an examination to determine if a serious health condition exists, even if the final diagnosis contraindicates a serious condition, may be protected by the FMLA where the other requirements of a "serious health condition" are met, i.e., treatment two or more times by a health care provider and a period of incapacity of more than three calendar days.

9. Here, the plaintiff was instructed by his physician not to work until after he was examined to determine if a serious health condition existed. The defendants did not properly initiate the FMLA certification process. The plaintiff satisfied the other requirements of a "serious health condition involving continuing treatment" because he was treated two times by a health care provider and had a period of incapacity of more than three consecutive calendar days. The court properly found that the defendants violated the FMLA when they terminated the plaintiff's employment.

10. The court did not err in awarding the plaintiff back wages and reinstatement.

11. The court did not abuse its discretion in declining to award liquidated damages on the basis that the defendants' violation of the FMLA was in good faith and defendants had reasonable grounds for believing the FMLA was not violated.

Affirmed.

O'CONNELL, P.J., dissenting, stated that the FMLA and the parties' collective bargaining agreement (CBA) are not in conflict and each is clear on its face. It should be concluded that the employer has not violated the FMLA and that the plaintiff's employment was properly terminated under the CBA. The FMLA is silent regarding notice requirements and the CBA provides that an absence of three consecutive days requires written medical notification. The FMLA leaves open the notice requirement to allow employers and employees to bargain for the usual and customary terms and conditions of employment. Where, as here, the act is clear, there is no reason to refer to the regulations implementing the act.

1. LABOR RELATIONS — FAMILY AND MEDICAL LEAVE ACT — NOTICE.

The Family and Medical Leave Act provides that when the need for a leave is foreseeable, an employee must provide the employer with no less than thirty days advance notice; the act is silent with regard to the notice requirements where the need for a leave is unforeseeable; what is sufficient, both in terms of the timing of the notice and its content, depends on the facts and circumstances of each case (29 USC 2612[e][1], [e][2][B]).

2. LABOR RELATIONS — FAMILY AND MEDICAL LEAVE ACT — IMPLEMENTING REGULATIONS.

The Family and Medical Leave Act grants the secretary of labor authority to promulgate regulations implementing the act; the regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the act; the regulations may be examined in interpreting the provisions of the act especially where the regulations address an issue on which the act itself is silent, such as the notice requirements where an employee's need for a leave under the act is unforeseeable (29 USC 2654).

3. LABOR RELATIONS — FAMILY AND MEDICAL LEAVE ACT — SERIOUS HEALTH CONDITIONS.

An employee's absence from work when a physician has given the employee a "no work" order pending further examinations to determine if a serious health condition exists may be protected by the Family and Medical Leave Act, even if the final diagnosis contraindicates a serious condition, where the employee meets the act's other requirements for a "serious health condition," i.e., treatment two or more times by a health care provider and a period of incapacity of more than three calendar days (29 CFR 825.114[a], [b]; 29 USC 2612[a][1][D]).

*Dwight Teachworth* for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *Ronald G. Acho*), for the defendants.

Before: O'Connell, P.J., and Griffin and Hoekstra, JJ.

Griffin, J. Defendants appeal as of right the order of the circuit court granting summary disposition in favor of plaintiff on his claim alleging a violation of the Family and Medical Leave Act (FMLA), 29 USC 2611 *et seq.*, awarding plaintiff back pay damages of $59,331.94, and reinstating plaintiff to his job as a truck driver. Plaintiff cross appeals, asserting that the trial court erred in denying his request for liquidated damages and in concluding he was not discharged in retaliation for asserting his rights under the FMLA. We affirm.

I

On October 9, 1995, plaintiff, a truck driver who delivered groceries for defendant Miesel Sysco Food Service Company (Miesel), was making a delivery at work when he began to experience chest pains. Plaintiff called Miesel's dispatcher and advised him of his symptoms, but continued to unload his truck until defendant Kenneth Angelosanto, plaintiff's supervisor, arrived with another employee to relieve plaintiff. Plaintiff refused a ride to the hospital and, after retrieving his car at Miesel's plant, picked up his girlfriend and drove himself to the emergency room. At the hospital, plaintiff was given a physical exam and an electrocardiogram (EKG), and medication was administered. There was no apparent heart damage and plaintiff was released from the hospital later that same day. However, plaintiff was told not to return to

work until after he had a stress test, which was scheduled in approximately ten days. The written "Personal Discharge Plan" given to plaintiff by the examining physician indicated:

*No work until stress test.*

\*    \*    \*

Your doctor has determined that you have chest pain of a minor or stable nature, presumably from the heart. Based on your current symptoms and evaluation, there is a low probability of a heart attack. . . . Most people with new, changing, or prolonged symptoms need hospitalization until the diagnosis is certain. [Emphasis added.]

Plaintiff did not immediately take this written discharge plan to Miesel following his visit to the emergency room, later offering several explanations regarding why he did not take the hospital form to Miesel. However, there appears to be no dispute that plaintiff did inform Miesel, through its employees, that he would be unable to work until he had the stress test. Plaintiff testified during his deposition that he telephoned Miesel's dispatcher the same evening that he was released from the emergency room and informed the dispatcher that he was going to be off work on medical leave until the stress test was administered. He testified that he spoke again to a dispatcher on October 10 or 11 to remind Miesel that he would not be working until the stress test was done. Plaintiff further testified that he telephoned one of Miesel's employees (Toni Kollios) in its human resources office on October 11 to discuss insurance issues related to the stress test and, on October 13, he called "Debbie" Williams in human resources regarding his absence from work.

Contrary to plaintiff's recollection, Debbie Williams testified that she told plaintiff that she "really had to have something to show why he was not at work." Miesel alleged that attempts were made to contact plaintiff and tell him that he needed to submit the doctor's note, but Miesel could not reach plaintiff because he had traveled out of town to winterize his cottage. On October 19, plaintiff delivered to Miesel the emergency room medical discharge plan that specified "No work until stress test."

On October 23, plaintiff was given a stress test that revealed no heart conditions and he was released to return to work the next day. However, plaintiff, a union member, learned that his employment had already been terminated on October 16 for allegedly violating two rules of the collective bargaining agreement: (1) unauthorized, unexcused absenteeism, and (2) an absence for three successive days without written medical notification.

Plaintiff brought suit against defendants alleging a violation of the FMLA along with other claims.

The circuit court ultimately granted plaintiff's motion for partial summary disposition and denied defendants' motion pertaining to the FMLA claim, finding no genuine issue of material fact that defendants, by terminating plaintiff's employment, violated the provisions of the FMLA as a matter of law.[1] An eviden-

---

[1] In a separate opinion and order, the trial court granted defendants' motion for summary disposition in regard to plaintiff's remaining claims under the Handicappers' Civil Rights Act, MCL 37.1101 et seq. (now the Persons with Disabilities Civil Rights Act [PWDCRA]), alleging retaliation for filing a PWDCRA claim, and violation of public policy for discharging plaintiff for filing a worker's compensation claim. Plaintiff had a prior work restriction imposed in 1995 because of an elbow injury and was limited to an eight-hour duty.

tiary hearing was held to determine the extent of plaintiff's damages stemming from the FMLA violation, and the trial court subsequently awarded plaintiff $59,331.94 in damages, attorney fees, and also ordered defendants to reinstate plaintiff to his "original position." Defendants now appeal and plaintiff cross appeals. Both appeals involve only issues related to plaintiff's claim under the FMLA.

II

Defendants first contend that the lower court erred in denying their motion for summary disposition and granting plaintiff's motion because plaintiff failed to give defendants adequate notice of his need for an unpaid leave of absence as required by the FMLA, and, further, that his employment was terminated for just cause separate and apart from any obligation under the FMLA. Although our state appellate courts have not yet had occasion to address issues concerning notice requirements under the FMLA, "review by this Court of the federal law regarding this federal statute is proper." *Smith v Goodwill Industries of West Michigan, Inc*, 243 Mich App 438, 443; 622 NW2d 337 (2000). See also *Young v Young*, 211 Mich App 446, 448, n 1; 536 NW2d 254 (1995). With respect to our review:

> Where there is no conflict, state courts are bound by the holdings of federal courts on federal questions. *Schueler v Weintrob*, 360 Mich 621; 105 NW2d 42 (1960); *Kocsis v Pierce*, 192 Mich App 92, 98; 480 NW2d 598 (1991). However, [when the] issue has divided the circuits of the federal court of appeals, we are free to choose the most appropriate view. *Schueler, supra* at 634; *Bruno v Dept' of Treasury*, 157 Mich App 122, 130; 403 NW2d 519 (1987). [*Id.* at 450.]

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Smith, supra* at 442. A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support of a claim. The motion should be granted if the evidence demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *MacDonald v PKT, Inc,* 464 Mich 322, 332; 628 NW2d 33 (2001). In deciding a motion under MCR 2.116(C)(10), the trial court considers the pleadings, affidavits, depositions, admissions, or other documentary evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of fact exists. *Ritchie-Gamester v Berkley,* 461 Mich 73, 76; 597 NW2d 517 (1999).

Enacted in 1993, the FMLA represents an attempt to reconcile "the demands of the workplace with the needs of families . . . ." 29 USC 2601(b)(1). Thus, while Congress sought to provide employees the right to "take reasonable leave for medical reasons," it also sought to do so "in a manner that accommodates the legitimate interests of employers." 29 USC 2601(b)(2) and (3). The FMLA applies to private-sector employers of fifty or more employees. 29 USC 2611(4). An eligible employee is entitled to twelve work weeks of unpaid leave during any twelve-month period because of, among other reasons, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 USC 2612(a)(1)(D). At the conclusion of a qualified leave period, the employee is entitled to reinstatement to his former position, or to an equivalent one, with the same terms and benefits. 29 USC 2614(a). The FMLA makes it "unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 USC 2615(a)(1).

The threshold issue raised by defendants involves the adequacy of the notice allegedly given by plaintiff regarding his need for FMLA leave time. When the need for FMLA leave is foreseeable, an employee must provide the employer with no less than thirty days advance notice. 29 USC 2612(e)(1) and (e)(2)(B); 29 CFR 825.302(a). However, where, as in the instant case, the need for FMLA leave is unforeseeable, the FMLA itself is silent regarding notice requirements, but the regulations implementing the act address the issue. In this regard, the FMLA grants the secretary of labor authority to promulgate regulations implementing the act. See 29 USC 2654. "Regulations promulgated pursuant to such an express delegation of authority 'are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Miller v AT&T Corp*, 250 F3d 820, 833 (CA 4, 2001), quoting *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837, 844; 104 S Ct 2778; 81 L Ed 2d 694 (1984). Thus, we examine those regulations in interpreting its provisions. *Summerville v Esco Co Ltd Partnership*, 52 F Supp 2d 804, 810 (WD Mich, 1999).

Specifically, 29 CFR 825.303 provides:

(a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave *as soon as practicable under the facts and circumstances of the particular case*. It is expected that an employee will give notice to the employer *within no more than one or two working days* of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. *In the case of*

*a medical emergency requiring leave because of an employee's own serious health condition* or to care for a family member with a serious health condition, *written advance notice pursuant to an employer's internal rules and procedures may not be required when* FMLA leave is involved.

(b) The employee should provide notice to the employer either in person or by *telephone,* telegraph, facsimile ("fax") machine or other electronic means. . . . *The employee need not expressly assert rights under the* FMLA or even mention the FMLA, but may only state that leave is needed. *The employer will be expected to obtain any additional required information through informal means.* The employee . . . will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation. [Emphasis added.]

What is sufficient, both in terms of the timing of the notice and its content, will depend on the facts and circumstances of each individual case. *Manuel v Westlake Polymers Corp,* 66 F3d 758, 764 (CA 5, 1995); *Mora v Chem-Tronics, Inc,* 16 F Supp 2d 1192, 1209 (SD Cal, 1998). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel, supra* at 764. See also *Thorson v Gemini, Inc,* 205 F3d 370, 381 (CA 8, 2000), quoting *Browning v Liberty Mut Ins Co,* 178 F3d 1043, 1049 (CA 8, 1999) (" 'Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave.' "); *Brohm v JH Props, Inc,* 149 F3d 517, 523 (CA 6, 1998). As expressed in 29 CFR 825.303(b), in giving notice, an employee need not expressly assert rights under the FMLA or even men-

tion the FMLA, but need only state that leave is needed. As explained by the court in *Stoops v One Call Communications, Inc*, 141 F3d 309, 312 (CA 7, 1998):

> When requesting unpaid leave, the employee need not mention the FMLA. 29 CFR 825.303(b). In fact, the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed.

See also *Price v Fort Wayne*, 117 F3d 1022, 1026 (CA 7, 1997); *Manuel, supra* at 764; *Mora, supra* at 1208-1209; *Stubl v T A Sys, Inc*, 984 F Supp 1075, 1085 (ED Mich, 1997); *Brannon v OshKosh B'Gosh, Inc*, 897 F Supp 1028, 1038 (MD Tenn, 1995); *Hendry v GTE North, Inc*, 896 F Supp 816, 828 (ND Ind, 1995).

Once circumstances suggest that an employee may qualify for FMLA leave, the employer has the obligation of inquiring further into the matter. *Spangler v Fed Home Loan Bank of Des Moines*, 278 F3d 847, 853 (CA 8, 2002); *Mora, supra* at 1209; *Williams v Shenango, Inc*, 986 F Supp 309, 319 (WD Pa, 1997). An employer may require that an employee's leave be verified by a medical certification issued by the health care provider of the employee. 29 CFR 825.305(a).[2] "When the employee first gives notice of his need for leave, employers who want such medical

---

[2] 29 CFR 825.305(a) provides in pertinent part:

An employer may require that an employee's leave . . . due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee . . . . An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301.

certification must give the employee specific, written notice of the requirement and the anticipated consequences for failing to meet this requirement." *Mora, supra* at 1209, citing 29 CFR 825.301(b)(1) and (c); 29 CFR 825.305(a). See also 29 CFR 825.301(c)(2)(i). "Employers who fail to provide specific written request for medical certification may not take any action against the employee for failure to provide medical certification." *Mora, supra* at 1209, citing 29 CFR 825.301(f).[3] When the leave is not foreseeable and advance notice is not possible, the employer must allow at least fifteen days after its request for the employee to provide certification. 29 CFR 825.305(b).[4]

In the present case, plaintiff left work on October 9, 1995, because of chest pains. Plaintiff testified that after being evaluated at a local hospital emergency room, he telephoned Miesel on October 9 and again on either the tenth or eleventh and informed defendants that he would be off work until he received the prescribed stress test. On October 19, plaintiff provided defendants with the written personal discharge

---

[3] 29 CFR 825.301(f) provides that "[i]f an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice."

[4] 29 CFR 825.305(b) reads as follows:

When the leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins. When this is not possible, the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.

plan from the emergency room physician that indicated "No work until stress test."

Defendants argue that in granting summary disposition in plaintiff's favor, the lower court never should have reached the question whether plaintiff provided medical verification within fifteen days, 29 CFR 825.305(b), because under the circumstances of this case, plaintiff failed to provide adequate notice of a potential FMLA-qualifying "serious health condition." Defendants contend that "[a] verbal statement that 'I am waiting for a stress test' is not adequate notice." Defendants further maintain that "[g]iven the employee's behavior on October 9th which negated any concerns over a serious medical problem of any immediate nature, and under all the facts of this case, adequate notice of possible FMLA implications could only be adequately achieved by the employee providing the medical statement to the employer as was the established policy and practice of the employer." We disagree.

Generally, whether the notice is adequate is a question of fact. *Mora, supra* at 1209, citing *Hopson v Quitman Co Hosp & Nursing Home, Inc,* 126 F3d 635, 640 (CA 5, 1997). However, numerous courts have granted summary judgment for the employer or employee on the basis of the adequacy of notice given for unforeseeable FMLA leave. See *Satterfield v Wal-Mart Stores, Inc,* 135 F3d 973, 976-977 (CA 5, 1998); *Mora, supra* at 1209. Indeed, it is well established that a telephone call can constitute sufficient verbal notice as a matter of law under the regulations and FMLA case law.[5] As these courts have consistently

---

[5] See 29 CFR 825.303(b) ("The employee should provide notice to the employer either in person or by telephone . . . ."); *Mora, supra* at 1212

noted, "if an employer is not sure whether an employee's leave qualifies it has the burden to inquire

("This Court finds that, as a matter of law, a reasonable jury must find that an employee who told [by telephone] his employer that his son was HIV positive and had a very high fever and that he 'cannot leave him when he is so ill,' provided sufficient notice that he needed leave because of his son's serious medical condition."); *Viereck v Gloucester City*, 961 F Supp 703, 707-708 (D NJ, 1997) (employee's telephone call to her employer telling him about her car accident, that she had been hospitalized, giving him a brief description of her injuries, and reporting that because of her condition she would be unable to return to work for some time, constituted adequate notice); *George v Associated Stationers*, 932 F Supp 1012, 1016 (ND Ohio, 1996) (sufficient notice was given where, three days before being examined and having his diagnosis confirmed, employee telephoned employer and told him that he could not work because he was ill with chicken pox); *Brannon, supra* at 1039 ("On the mornings of January 10-11, and upon her return to work on January 12, 1994, plaintiff told Ms. Crisp that her daughter was sick. This was sufficient to put OshKosh on notice that the leave potentially qualified under 29 USC 2612(a)(1)(C)."); *Hendry supra* at 828 (the plaintiff arguably complied with notice requirement when she telephoned employer and reported herself ill with a migraine headache). Cf. *Spangler, supra* at 852-853 (genuine issue of material fact existed regarding appropriate notice where employee, who had a history of depression known to employer, telephoned and stated she would not be in because it was "depression again"), *Collins v NTN-Bower Corp*, 272 F3d 1006 (CA 7, 2001) (affirming summary judgment for the employer when an employee suffering from depression called and informed her employer only that she was "sick"), *Satterfield, supra* at 979 (evidence that employee's mother told store manager that employee was "sick" and that mother delivered note from employee, advising that employee "was having a lot of pain in her side" and would not be able to work that day, was insufficient notice of FMLA-qualifying leave), *Gay v Gilman Paper Co*, 125 F3d 1432, 1434-1435 (CA 11, 1997) (notice inadequate as a matter of law where, although employee was actually admitted to a psychiatric hospital for treatment for a nervous breakdown, employee's husband deliberately withheld information and misrepresented to employer that she was in the hospital "having some tests run"), *Carter v Ford Motor Co*, 121 F3d 1146 (CA 8, 1997) (notice ruled inadequate where wife informed employer by telephone that *she* was sick and that she and her employee/husband would be out for awhile, and employee/husband, diagnosed two days later as suffering from anxiety and depression, later informed employer that he would be "out sick" but offered no further information regarding illness or return date), and *Neide v Grand Court Lifestyles, Inc*, 38 F Supp 2d 938, 948-949 (D Kan, 1999) (employee unable to work because of injuries sustained in automobile accident failed to provide employer with requisite notice absent any discussions with employer or co-workers about his condition, absence, or expected return date).

further." *Mora, supra* at 1213. See also *Thorson, supra* at 381; *George v Associated Stationers,* 932 F Supp 1012, 1016 (ND Ohio, 1996);[6] *Hendry, supra* at 828.

In the instant case, we conclude that plaintiff's notice, by telephone, was sufficient as a matter of law to put defendants on notice that plaintiff might qualify for FMLA leave. Although there is some factual dispute regarding whether defendants verbally informed plaintiff that he had to submit his doctor's note, it is undisputed that plaintiff telephoned Miesel on more than one occasion within two days of his emergency room visit and informed its personnel that he would be off work until the stress test was done. Given defendants' awareness of the events leading to plaintiff's emergency room visit, plaintiff's telephone calls to Miesel's dispatcher and its insurance and human resources departments constituted adequate notice as a matter of law and indicated to defendants that the medical condition might be serious or that the FMLA could be applicable.

Defendants complain that "common experience would not require that an employer equate a stress

---

[6] The *George* court, *id.* at 1016, explained:

Nor is there any requirement in the law or in defendants' procedures that plaintiff already have received medical treatment at the time he gave notice of his illness to his employer or that he immediately submit a medical excuse (in fact there appears to be no reference at all to the Act [FMLA] in defendants' employee handbook). George contacted his supervisor the morning of January 3, thus supplying the required verbal notification that he needed the qualifying leave. He was not required to assert rights under the Act. 29 CFR 825.303(b) . . . . The obligation shifted to the employer to determine whether leave was sought under the Act and to obtain any additional information. . . . If the Company required medical certification in conjunction with a leave request, it was required to give notice of its demand to George. 29 CFR 825.305.

test with 'incapacity,' " and in light of indications that plaintiff's chest pain was of a "minor or stable nature," plaintiff should have provided further details regarding his "serious" medical condition when he called Miesel. However, defendants' argument improperly places the burden on plaintiff to explain how his leave qualified under the FMLA. *Mora, supra* at 1212-1213. As previously noted, under the FMLA it was incumbent on defendants to make a specific written request for medical certification; if an employer is uncertain whether an employee's leave is covered by the FMLA, it has the burden to inquire further. 29 CFR 825.301(b)(1), (c)(2)(i), and 29 CFR 825.305(a); *Mora, supra* at 1209, 1213; *Stubl, supra* at 1089; *George, supra* at 1016. Although defendants herein purportedly attempted to contact plaintiff to obtain further details regarding his absence, on October 19, 1995, plaintiff provided defendants with certification in the form of the treating physician's personal discharge plan, well within the fifteen-day period specified by 29 CFR 825.305(b). Although plaintiff failed to comply with the leave provisions of his collective bargaining agreement, the FMLA cannot be diminished by a collective bargaining agreement. 29 USC 2652(b); 29 CFR 825.302(g).[7] See also *George, supra* at 1018.[8] Thus, we

---

[7] 29 CFR 825.302(g) provides:

An employer may waive employees' FMLA notice requirements. In addition, an employer may not require compliance with stricter FMLA notice requirements where the provisions of a collective bargaining agreement, State law, or applicable leave plan allow less advance notice to the employer. For example, if an employee (or employer) elects to substitute paid vacation leave for unpaid FMLA leave (see § 825.207), and the employer's paid vacation leave plan imposes no prior notification requirements for taking such vacation leave, no advance notice may be required for the FMLA leave taken in these circumstances. On the other hand, FMLA notice requirements would apply to a period of unpaid FMLA leave, unless the

hold that the trial court did not err in concluding that plaintiff gave defendants adequate notice of a possible FMLA-qualifying leave as a matter of law.

III

Defendants also argue that plaintiff did not establish that he had a "serious health condition" entitling him to the protections of the FMLA. Defendants maintain that plaintiff did not suffer from a serious health condition because he never actually had a heart attack but was merely tested for the condition, and no "serious health condition" was ultimately diagnosed following the stress test. We disagree.

As previously noted, the FMLA provides that eligible employees are entitled to take leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 USC 2612(a)(1)(D). With this requirement, "Congress sought to parse out [minor] illnesses which it believed should be treated under sick leave policy from those much more serious illnesses that implicate the protections of the FMLA." *Bauer v Dayton-Walther Corp*, 910 F Supp 306, 310

---

employer imposes lesser notice requirements on employees taking leave without pay.

[8] As the *George* court noted, *supra* at 1017-1018:

An attendance policy which does not except as an "occurrence" an absence caused by a serious medical condition violates the Act. If an employee's last "occurrence" is due to a serious health condition within the Act, the Company may not terminate the employee based upon its absenteeism policy. Fair or not, as seen through the eyes of the employer, this is the law.

See also *Marrero v Camden Co Bd of Social Services*, 164 F Supp 2d 455, 463-464 (D NJ, 2001).

(ED Ky, 1996), aff'd 118 F3d 1109 (CA 6, 1997). The FMLA defines the parameters of a "serious health condition" as follows: "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 USC 2611(11).

The regulations of the Department of Labor (DOL) further explain that "continuing treatment by a health care provider" includes

[a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider[.] [29 CFR 825.114(a)(2)(i)(A).]

Of particular import to the present case is an additional regulation that, in conjunction with the above provision, further explains that "[t]reatment . . . includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations." 29 CFR 825.114(b) (emphasis added).

Defendants argue that this language does not authorize FMLA leave for the purpose of having an

examination to determine whether one has a serious health condition. Rather, defendants maintain in their brief that the question of treatment does not arise until plaintiff has established that he has a "serious health condition":

> What it means is that one is entitled to leave if "incapacitated" by a "serious health condition" for more than three consecutive days *and* undergoes "treatment" two or three times, which "treatment," under the CFR, could include an examination to determine a serious health condition. It does not purport to authorize leave unless a person meets the threshold of having a "serious health condition."

> \*    \*    \*

> The FMLA, and its implementing regulations defining "serious health condition," are *not* concerned with the *potential* dangers of an illness, but only with the *present state* of that illness. . . .

> To construe the FMLA to include conditions which are only potentially capable of evolving into serious illnesses would bring within the protection of the Statute, virtually every common malady. It would also be in direct conflict with Congress' intention to *exclude* from the protection of the FMLA, minor illnesses, even assuming a doctor suspects something more serious, that Congress believed these conditions only should be covered under the employer's sick leave policy. [Emphasis in original.]

In support of their argument, defendants rely on *Seidle v Provident Mut Life Ins Co*, 871 F Supp 238 (ED Pa, 1994), in which the plaintiff sought FMLA leave after being absent from work because of her son's ear infection. The *Seidle* court, *id.* at 246, held that

> the physicians' [the plaintiff's expert witnesses] opinions that otitis media is a "serious medical condition" are based largely on the *potential* dangers of otitis media, especially if left untreated. However, the FMLA and its implementing reg-

ulations defining "serious health condition" are not concerned with the *potential* dangers of an illness but only with the present state of that illness. See 29 USC 2611(11). [Emphasis in original.]

However, we find *Seidle* to be inapposite for several reasons. First, the *Seidle* court held that the plaintiff could not establish that her son had a "serious health condition" because he had been incapacitated from attending daycare for only three days, not the statutory four or more. *Id.* at 243-244. Second, the plaintiff took her son to the doctor on only one occasion; thus, he was not receiving " 'continuing treatment by a health care provider,' " *id.* at 244, and, unlike the present case, no physician had recommended that the plaintiff's son be kept home for more than three days. Finally, *Seidle* predates the implementation of 29 CFR 825.114(b), part of the final version of regulations that went into effect in April 1995; thus, the above-quoted statement by the *Seidle* court was made without the benefit of this regulation.

Defendants also cite *Hodgens v Gen Dynamics Corp*, 963 F Supp 102 (D RI, 1997), in support of their argument in this regard. In *Hodgens*, the plaintiff experienced chest pains, visual problems, and profuse perspiration—ultimately diagnosed as atrial fibrillation, an arrhythmia of the heart—and took time off from his job while his doctor monitored his blood pressure and adjusted his medication. The federal district court held that the plaintiff's leave was not covered under the FMLA because the plaintiff had failed to establish that he had a "serious health condition" or was "incapacitated." The court held "an employee's absence [from work] must be necessary to enable the employee to receive treatment. If an employee can

obtain treatment without missing work, any period of absence cannot be attributed to the need to receive treatment." *Id.* at 106. The court found that there was no evidence that Hodgens was required to be absent from work in order to receive treatment from his physician and no indication that he could not carry out the duties of his job, *id.*, and thus granted summary judgment in favor of the defendant employer.

However, defendants fail to note that on subsequent appeal, *Hodgens v Gen Dynamics Corp*, 144 F3d 151 (CA 1, 1998), the First Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of the defendant employer but, in so doing, based its decision on different reasoning and indeed criticized the above-stated rationale of the district court. The circuit court stated:

> First, according to GD [defendant General Dynamics], Hodgens was not even entitled to medical leave under the FMLA because he did not suffer from a "serious health condition" as the statute requires. The district court granted summary judgment to General Dynamics largely on this basis. For the reasons set forth below, we hold that Hodgens did suffer from a "serious health condition" within the meaning of the FMLA.
>
> *       *       *
>
> Hodgens suffered from numerous symptoms in July and August 1993. Dr. Wilkinson examined him and, concerned about angina and its serious implications, ordered a series of tests directed toward diagnosing the cause and nature of his problem, with a view toward prescribing treatment (which she eventually did, although she never was able to rule out angina). Then between September 22 and 27, Hodgens was diagnosed with atrial fibrillation, and again was required to make many visits to Dr Wilkinson's office. This latter period constituted more than three consecutive

days' worth of absences from work for a serious health
condition. And these absences were medically necessary:
Hodgens' treating physician, Dr. Wilkinson, filled out a
work-restriction form—at the top of which appeared the
date . . . on which Hodgens could return to work. Dr. Wil-
kinson's form carries the inference that that entire period of
absence was medically necessary, and GD nowhere rebuts
that inference. Indeed, on September 21, GD's own nurse
refused to let Hodgens return to work at least in part
because of his atrial fibrillation. Thus, we cannot accept
GD's claim, based on Dr. Wilkinson's initially clearing Hod-
gens to return to work on September 20, that Hodgens's
health condition did not prevent him from working within
the meaning of the FMLA during the period September 22-27.

*          *          *

General Dynamics argues that many of Hodgens's earlier
absences were not covered by the FMLA because "Dr. Wilkin-
son was never able to diagnose precisely what caused [Hod-
gens's] symptoms.". . . It seems unlikely that Congress
intended to punish people who are unlucky enough to
develop new diseases, or to suffer serious symptoms for
some period of time before the medical profession is able
to diagnose the cause of the problem. . . . It would seem
that Congress intended to include visits to a doctor when
the employee has symptoms that are eventually diagnosed
as constituting a serious health condition, even if, at the
time of the initial medical appointments, the illness has not
yet been diagnosed nor its degree of seriousness deter-
mined. The Labor Department's final regulations support
this interpretation: "Treatment for purposes of paragraph
(a) of this section [defining 'serious health condition' in
terms of 'treatment' received, inter alia] includes (but is not
limited to) examinations *to determine if a serious health
condition exists* and evaluations of the condition." 29 CFR
825.114(b) (1997) (emphasis added). Thus, as long as Hod-
gens satisfied, at some point in time, the "more than three
consecutive days" requirement for establishing a serious
health condition, his intermittent absences for less than
four days (even for portions of one day) were protected

under the FMLA if they were necessary "to determine if a serious health condition exists," *id.*, or to treat such a condition. This is true even if the intermittent absences occurred before the consecutive absences. [*Hodgens, supra*, 144 F3d 161-163.]

The *Hodgens* court then addressed the issue of the plaintiff's inability to perform the functions of his position as required in 29 USC 2612(a)(1)(D) and once again disagreed with the district court's interpretation of this statutory provision:

The district court's alternative reason for rejecting Hodgens's FMLA claim is that "there is no evidence that [his health] condition rendered him unable to perform the functions of his position," as required in 29 USC 2612(a)(1)(D). The court therefore concluded that his absences were not protected conduct under the FMLA. We reject this contention as well. The court apparently read the statute to require Hodgens to be actually incapacitated, in the sense of medically too sick to work, for any absence that was to be protected by the FMLA.

We disagree. The statutory language—"unable to perform" his job—in 29 USC 2612(a)(1)(D) does not necessarily mean that an employee's physical condition itself "actually incapacitate[s]" him and prevents him from working. The statute could also be read to protect absences from work for whatever time the employee needs in order to be diagnosed and treated for a serious medical condition. Under this reading of the statutory language, the employee may be found to be "unable to perform" his job if his medical appointments conflict with his work (and the other statutory requirements are met), even if he is not "too sick to work." The text of the statute does not specify which of these two interpretations of "unable to perform" (or any other) was intended by Congress.

In determining which interpretation to adopt, we must consider the fact that the FMLA is a remedial statute. . . . The fundamental purpose of the FMLA is "to entitle employees to take reasonable leave for medical reasons," 29 USC

2601(b)(2), "to help working men and women balance the conflicting demands of work and personal life," [*Price v*] *City of Fort Wayne*, 117 F3d [1022, 1024 (CA 7, 1997)]. This purpose is better served by adopting the broader reading than by adopting the district court's more constrained construction requiring physical incapacitation. *We hold that it will suffice if an employee is "unable to perform" his job because of the need to obtain medical treatment or a diagnosis; he does not have to be physically unable to work.* [*Hodgens, supra*, 144 F3d 163-164 (emphasis added).]

The First Circuit Court of Appeals further noted, *id.* at 164, that its interpretation of 29 USC 2612(a)(1)(D) was supported not only by the legislative history of the FMLA, but also by the Department of Labor's final (not interim) regulations, most notably 29 CFR 825.114(b), which includes "examinations to determine if a serious health condition exists and evaluations of the condition" within the definition of "serious health condition" in terms of "treatment" received. Thus, the First Circuit Court of Appeals opined that

[i]t is thus apparent that the agency charged with interpreting the FMLA—and filling in any gaps or ambiguities in the Act—believed that the Act should be interpreted broadly enough to protect absences from work that are necessary for the purpose of having one's medical condition diagnosed and treated, such as those at issue here. The agency did not interpret the statutory language—that Hodgens's health condition render him "unable to perform" his work—as requiring him to be "too sick to work." The agency's interpretation is entitled to deference. . . . We hold that Hodgens's absences from work were protected by the FMLA if they were required for the diagnosis and treatment of his medical condition, as long as he satisfied the other requirements for "seriousness"; it is not necessary that the medical condition make him "too sick to work" on a particular day in order for an absence on that day to be covered under the

statute. We therefore reverse the district court's holding to
the extent that it stated a contrary view. The FMLA protected
Hodgens's absences whenever his health condition required
him to visit his physician rendering him unable to work dur-
ing the time it took to accomplish those visits. [*Hodgens*,
*supra*, 144 F3d 165.]

The circuit court concluded that the district court
"erred to the extent that it predicated its grant of
summary judgment [to General Dynamics] on the
ground that there was *no* FMLA-qualifying leave at
issue." *Id.* (Emphasis in original.) Thus, although Gen-
eral Dynamics ultimately prevailed on appeal in *Hod-
gens*,[9] the rationale underlying that decision does not,
as defendants contend, support their argument that
plaintiff herein was not incapacitated because he
allegedly could have obtained treatment without miss-
ing work. On the contrary, *Hodgens* supports the
present plaintiff's position that, assuming the other
requirements of a "serious health condition" are met,
i.e., treatment two or more times by a health care
provider and a period of incapacity of more than
three calendar days, 29 CFR 825.114(a)(2)(i)(A), an
absence due to a physician's "no work" order pending
an examination to determine if a serious health condi-
tion exists, even if the final diagnosis contraindicates
a serious condition, may be protected by the FMLA.

---

[9] The circuit court in *Hodgens* concluded that although Hodgens had
established a prima facie case of retaliation, General Dynamics had articu-
lated a legitimate nondiscriminatory reason for terminating his employ-
ment and Hodgens then "failed to demonstrate that a reasonable trier of
fact could find his inclusion in the RIF [reduction in force] to be based on
his having taken FMLA leave." *Id.* at 166. Consequently, because the over-
whelming evidence demonstrated that Hodgens' employment was termi-
nated because of his poor performance and his non-FMLA-protected
absences, the circuit court in *Hodgens* affirmed the grant of summary
judgment on the FMLA claim. *Id.* at 172.

Another case that is relevant to the question whether plaintiff had a "serious health condition" within the meaning of the FMLA is *Thorson v Gemini, Inc, supra.* In *Thorson,* the plaintiff left work on Wednesday, February 2, 1994, complaining of diarrhea and stomach cramps and went to see a physician. She was absent from work for the remainder of the week and returned Monday, February 7, with a note from her doctor indicating "no work" until Monday, February 7. On Monday, she worked only a few hours before returning to the doctor with stomach pain. The doctor, suspecting either a peptic ulcer or gallbladder disease, ordered tests for Friday, February 11. The test results were normal, and the plaintiff returned to work on Monday, February 14, once again with her doctor's note stating "no work" until February 14. The plaintiff worked that week but her employment was terminated on February 18 for absenteeism exceeding five percent of her scheduled work hours during the previous twelve months. On March 9, another doctor determined that the plaintiff had a small hiatal hernia, mild antral gastritis that could be managed with antacid, and duodenitis, all stress-related conditions. The plaintiff brought suit alleging violations of the FMLA, and the federal district court granted summary judgment to her on the issue of FMLA liability. Following a jury trial on the issue of damages, the plaintiff was awarded damages. On appeal, the order and judgment in favor of the plaintiff was affirmed. The Eighth Circuit Court of Appeals, citing 29 CFR 825.114(b), *Thorson, supra* at 378, concluded that the plaintiff had a "serious health condition" within the meaning of the FMLA:

[W]e conclude that Thorson received "continuing treatment" under the objective standard set forth in the regulations, and thus her illness satisfied this part of the "serious health condition" test. Subjectively, it may be that Thorson's condition was not "serious" in the usual sense of the word. Nevertheless, until February 11, her physician believed Thorson could have a potentially serious condition, and it was not until March 9, after Thorson had been terminated from her job at Gemini, that a diagnosis definitively ruled out her physician's initial suspicions. Thorson was sufficiently ill to see a physician two times in a period of just a few days and that is all that the plain language of both the interim and final rules requires for "continuing treatment."

\*    \*    \*

. . . While Congress may have "expected" that minor illnesses "normally" would not come within the definition of "serious health condition," that does not mean such ailments can never be FMLA "serious health conditions." Further, a non-exclusive list of ailments [set forth in the FMLA legislative history] that might qualify as "serious health conditions" that does not include Thorson's final diagnosis does not preclude FMLA leave for her absence. She missed work for more than a "few days" on the advice of a doctor. Thorson's treating physician originally thought she might have a peptic ulcer or gallbladder disease, conditions that could have been quite serious in any sense of the word.

. . . It is true that honest (or less than honest) errors by health care providers and fraud or abuse by employees are potential problems, given the objective nature of the test. Yet, . . . in further defining "serious health condition" to require an "incapacity requiring absence from work," Congress and the DOL have devised protections for the employers that choose to use them. See 29 CFR 825.114(d) (1993) ("The scope of 'serious health condition' is further clarified by the requirements of the Act that the health care provider may be required to certify . . . that 'the employee is unable to perform the functions of the position of the employee.' ").

Under the regulatory test promulgated by the DOL in the interim final rule, as interpreted in light of the final rule and relevant DOL opinions, there are no genuine fact issues on the question of whether Thorson received "continuing treatment" under the FMLA for her February 1994 illness. Thus, she met this part of the test for a "serious health condition." [*Id.* at 379-381.]

With regard to the defendant employer's claim that even if Thorson met the "continuing treatment" element of a "serious health condition," she nonetheless failed to show that her condition resulted in an incapacity requiring absence from work, the *Thorson* court stated:

Thorson was absent for more than three days with notes from her physician, written on two different occasions within that period of absence, indicating that she was not to work. At that point, Gemini became obligated either to count Thorson's absence as FMLA leave under the "serious health condition" provision or to follow the procedures set out in the statute and the regulations designed to prevent employee abuse of the Act. . . . That is, Gemini could have initiated the FMLA's certification process before summarily terminating Thorson. . . . Had it done so, it may have been able to determine that Thorson did not have a "serious health condition" within the meaning of the FMLA.

. . . The responsibility to request FMLA certification is the employer's. Gemini never sought such certification, notwithstanding that Thorson had timely presented her employer with two notes from her physician indicating, without further explanation, that she was not to work until certain dates.

We agree with the District Court that, in these circumstances, Gemini cannot show that there is a genuine issue of fact regarding Thorson's incapacity during the February absences, although it may have been able to do so (or even to prevail on this issue) had it availed itself of the protections provided for within the FMLA. [*Id.* at 381-382.]

Other courts have similarly concluded that, under certain circumstances, absences based on examinations or evaluations to determine if a serious health condition exists pursuant to 29 CFR 825.114(b) are within the coverage of the FMLA. See *Miller v AT & T Corp*, 250 F3d 820, 830-831 (CA 4, 2001) (episode of flu may constitute serious health condition and the plaintiff's second visit to physician as a result of flu, which included physical examination and drawing blood, constituted "treatment" within meaning of 29 CFR 825.114[b] to determine if serious health condition existed, even though physician simply evaluated the employee's condition); *Stubl, supra* at 1088-1089 (citing 29 CFR 825.114[b], the court held that the employee's two visits to a doctor regarding the effects his son's suicide had on his health constituted "continuing treatment" so that his illness could be considered a "serious health condition" under the FMLA; the plaintiff's doctor diagnosed the employee as suffering from "prolonged grief reaction" and concluded that he needed a leave of absence from work, with a follow-up visit to assess whether he could return to work).[10]

We find the reasoning of the *Thorson* court to be persuasive and applicable to the present, closely comparable circumstances. Here, the trial court found that although tests ultimately revealed that plaintiff did not have a serious heart condition, his absence

---

[10] Certain other cases in which the plaintiffs/employees' health conditions have not qualified as "serious health conditions" under the FMLA are factually inapposite, and, unlike the present circumstances, neither involved a physician-ordered extended "no work" requirement nor, for various reasons, implicated 29 CFR 825.114(b). See, e.g., *Bauer, supra; Stoops, supra; Bond v Abbott Laboratories*, 7 F Supp 2d 967 (ND Ohio, 1998), aff'd 188 F3d 506 (CA 6, 1999); *Olsen v Ohio Edison Co*, 979 F Supp 1159 (ND Ohio, 1997); *Boyce v New York City Mission Society*, 963 F Supp 290 (SD NY, 1997); *Brannon, supra.*

nonetheless qualified under the FMLA because, follow-
ing an emergency room visit, a health care provider
made "a professional assessment of plaintiff's condi-
tions and determined that an extended absence from
work was necessary." We agree with the lower court's
conclusion. The legislative history of the FMLA shows
that Congress clearly contemplated that "heart
attacks" and "heart conditions" would fall within the
definition of "serious health condition." See citations
of FMLA legislative history contained in *Miller, supra*
at 834-835, *Bond v Abbott Laboratories*, 7 F Supp 2d
967, 973 (ND Ohio, 1998), aff'd 188 F3d 506 (CA 6,
1999), *Olsen v Ohio Edison Co*, 979 F Supp 1159,
1163 (ND Ohio, 1997), and *Seidle, supra* at 242. Cer-
tainly, then, it is reasonable and prudent for an emer-
gency room physician, when presented with a patient
complaining of chest pains, to err on the side of
safety and prohibit any work-related activities until
further testing either confirms or rules out a serious
heart-related condition. Whether an illness qualifies as
a "serious health condition" for purposes of the FMLA
is a legal question that an employee or an employer
cannot avoid " 'simply by alleging it to be so.' " *Bond,
supra* at 974, quoting *Carter v Rental Uniform Serv
of Culpeper, Inc*, 977 F Supp 753, 761 (WD Va, 1997).
As explained by the court in *Olsen, supra* at 1166:

> [I]n order to show that he or she was "required" to miss
> work for more than three days, a plaintiff employee must
> show that he or she was prevented from working *because
> of* the injury or illness based on a medical provider's assess-
> ment of the claimed condition. It does not mean that, in the
> employee's own judgment, he or she should not work, or
> even that it was uncomfortable or inconvenient for the
> employee to have to work. Rather, it means that a "health
> care provider" has determined that, in his or her profes-

sional medical judgment, the employee *cannot* work (or
could not have worked) *because of* the illness. [Emphasis in
original.]

"Generally then, a health care provider must
instruct, recommend, or at least authorize an
employee not to work for at least four consecutive
days for that employee to be considered incapacitated
for the required period of time under the FMLA." *Bond,
supra* at 974. Here, on October 9, 1995, an emergency
room physician instructed plaintiff he should not
work until after his stress test, which was adminis-
tered on October 23, 1995. Although defendants argue
that plaintiff did not have a serious health condition
and could have worked, those unsupported chal-
lenges do not overcome the undisputed fact that
plaintiff was instructed by his physician not to work
until after he had been given "examinations to deter-
mine if a serious health condition exists and evalua-
tions of the condition." 29 CFR 825.114(b). Defen-
dants never properly initiated the FMLA certification
process, and it is otherwise undisputed that plaintiff
has satisfied the other requirements of a "serious
health condition involving continuing treatment," 29
CFR 825.114(a)(2)(i)(A), i.e., having been treated two
times by a health care provider and having a period
of incapacity of more than three consecutive calendar
days. Under these circumstances, we conclude that
the trial court did not err in granting summary dispo-
sition in favor of plaintiff on his FMLA claim. Defen-
dants failed to show that there is a genuine issue of
material fact regarding the requisite statutory notice
or plaintiff's incapacity under the FMLA; consequently,
we hold defendants violated the act when they termi-
nated plaintiff's employment.

IV

Defendants also argue that the trial court erred in awarding plaintiff back-pay damages and by ordering that he be reinstated to his job. An award of damages following an evidentiary hearing is reviewed on appeal pursuant to the clearly erroneous standard. *Triple E Produce Corp v Mastronardi Produce, Ltd,* 209 Mich App 165, 177; 530 NW2d 772 (1995).

If an employer has violated the FMLA, and if justified by the facts of a particular case, an employee may recover wages, employment benefits, or other compensation and may also obtain appropriate relief, such as employment, reinstatement, and promotion. 29 USC 2614(a), 29 USC 2617; 29 CFR 825.400(c). However, the employee is not entitled to any more reimbursement or benefits "than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 CFR 825.216(a). Moreover, if " 'the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.' " *Reynolds v Phillips & Temro Industries, Inc,* 195 F3d 411, 414 (CA 8, 1999), quoting 29 CFR 825.214(b). Thus, "[i]f the employee has been on a workers' compensation absence during which FMLA leave has been taken concurrently, and after 12 weeks of FMLA leave the employee is unable to return to work, the employee no longer has the protections of FMLA and

must look to the workers' compensation statute or ADA [Americans with Disabilities Act] for any relief or protections." 29 CFR 825.216(d).

Here, defendants argue that plaintiff was not entitled to reinstatement because he filed a worker's compensation claim concurrently with the instant case. Plaintiff testified, however, that he had not required treatment for his prior elbow injury in over two years and the trial court found that plaintiff was ready and willing to return to work. Plaintiff was not on a worker's compensation absence at the time of the termination of his employment and, in fact, was ready to return to work immediately after taking the stress test. Consequently, the trial court did not err in awarding plaintiff back wages and reinstatement.

V

Plaintiff argues on cross appeal that the trial court erred in disallowing an award of liquidated damages pursuant to 29 USC 2617(a)(1)(A)(iii) and 29 CFR 825.400(c). We disagree.

Liquidated damages are to be awarded under the FMLA "unless such amount is reduced by the court because the violation was in good faith and the employer had reasonable grounds for believing the employer had not violated the Act." 29 CFR 825.400(c). As explained by the court in *Chandler v Specialty Tires of America (Tennessee), Inc*, 283 F3d 818, 827 (CA 6, 2002):

> Section 2617(a)(1)(A)(iii) of the FMLA provides that, in addition to compensatory damages specified in § 2617(a)(1)(A)(i) & (ii), an employer shall be liable for an amount of liquidated damages equal to the amount of

wages, salary, employment benefits, or other compensation denied or lost to an employee, plus interest, by reason of the employer's violation of § 2615 of the statute. However, the district court may reduce that award to only compensatory damages if the employer "proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615." 29 USC 2617(a)(1)(A)(iii). The employer must therefore show *both* good faith *and* reasonable grounds for the act or omission. *Dole v Elliott Travel & Tours, Inc*, 942 F2d 962, 968 (CA 6, 1991). [Emphasis in original.]

The decision whether to reduce the damages is within the discretion of the trial court. 29 USC 2617(a)(1)(A)(iii); *Nero v Industrial Molding Corp*, 167 F3d 921, 928 (CA 5, 1999).

Here, the trial court awarded damages but concluded that liquidated damages were not warranted because defendants' violation of the FMLA was in good faith and defendants had reasonable grounds for believing the act was not violated. On these facts, we conclude that the trial court did not abuse its discretion in declining to award liquidated damages to plaintiff. *Id.*; *Nero, supra*.

VI

Finally, plaintiff argues for the first time on cross appeal that the trial court erred in not finding that he was discharged "in retaliation" under the FMLA. See, generally, *Skrjanc v Great Lakes Power Service Co*, 272 F3d 309 (CA 6, 2001). An employer is prohibited from interfering with, restraining, or denying the employee's exercise of rights under the FMLA. 29 USC 2615(a)(1). The employer is also prohibited from dis-

charging or discriminating against the employee "for opposing any practice made unlawful" by the FMLA. 29 USC 2615(a)(2). Discrimination is not permitted against an employee for filing a charge, giving information, or testifying in connection with an FMLA action. 29 USC 2615(b). Plaintiff did not allege that defendants discriminated against him under the FMLA, did not raise the issue of retaliation below, and now offers no factual support, other than generalized assertions, for his claim. Consequently, we decline to consider this unpreserved issue on appeal. *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98; 494 NW2d 791 (1992). In any event, the trial court found for plaintiff on the substantive FMLA claim. Thus, the trial court did not err in not specifically addressing an alternative ground for its decision.

Affirmed.

HOEKSTRA, J., concurred.

O'CONNELL, P.J. *(dissenting).* I respectfully dissent. The majority opinion impliedly concludes that a conflict exists between the Family and Medical Leave Act (FMLA), 29 USC 2611 *et seq.*, and defendants' collective bargaining agreement (CBA). I disagree. Since the FMLA and the CBA are not in conflict, and each is clear on its face, I conclude that the employer has not violated the FMLA and plaintiff's employment was properly terminated under the CBA.

In *Staff v Johnson*, 242 Mich App 521, 530; 619 NW2d 57 (2000), this Court stated, "To determine whether there is a real conflict between a statute and a court rule, both are read according to their plain meaning." Applying this reasoning analogously when comparing the FMLA and the CBA, there exists no con-

flict. The majority, *ante* at 167, states that "the FMLA itself is silent regarding notice requirements . . . " The CBA provides that an absence of three consecutive days requires written medical notification. Reading the FMLA and the CBA in conjunction with each other, I conclude that the plaintiff bargained for, and received, pursuant to the terms of the CBA, a period of three days in which no written medical authorization needed to be presented to his employer. However, after three days the CBA requires written notification from an authorized medical professional.

The FMLA intentionally leaves open the notice requirement. In my opinion, this allows employers and employees to bargain for the usual and customary terms and conditions of employment within a particular industry without violation of the FMLA. I concur with the majority opinion that the FMLA grants the secretary of labor authority to promulgate regulations implementing the FMLA. However, when the act itself is clear, there exists no reason to refer to the regulations implementing the act.

The majority, in order to reach a result not within the plain language of the FMLA, relies on the regulations implementing the FMLA. "Regulations promulgated pursuant to such an express delegation of authority 'are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.' " *Miller v AT&T Corp*, 250 F3d 820, 833 (CA 4, 2001), quoting *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837, 844; 104 S Ct 2778; 81 L Ed 2d 694 (1984). Thus, in my opinion, the controlling weight test of the regulations is only resorted to if the FMLA is not clear or a conflict exists. Because both the FMLA and the CBA are clear and not

in conflict, there is no need to rely on the implementing regulations to resolve this dispute. I do not believe the secretary of labor's implementing regulations take precedence over the clear language of the FMLA.

When read together, the FMLA and the CBA are not in conflict. Because they are not in conflict, the CBA controls the terms and conditions of employment. I would reverse the trial court's order and affirm the employer's right to terminate plaintiff's employment under the terms and conditions of the CBA.