Charles M. **BROHM**, M.D.,
Plaintiff–Appellant,

v.

**JH PROPERTIES, INC.**, doing business as Jewish Hospital of Shelbyville, Kentucky, Defendant–Appellee.

No. 97–5112.

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1998.

Decided July 24, 1998.

Rebecca R. Barnes (briefed), Oliver H. Barber, Jr. (argued and briefed), Gittleman & Barber, Louisville, KY, for Plaintiff–Appellant.

Caroline Miller Oyler (briefed), Wyatt, Tarrant & Combs, Jon L. Fleischaker (argued and briefed), Dinsmore & Shohl, Louisville, KY, for Defendant–Appellee.

Before: GUY, GILMAN, and GODBOLD,* Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Dr. Charles M. Brohm, an anesthesiologist, appeals from a grant of summary judgment dismissing his disability discrimination suit against the Jewish Hospital of Shelbyville. He claims that the hospital violated the Kentucky Civil Rights Act, Ky.Rev.Stat. § 344.010, *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, when it discharged him for sleeping during surgical procedures. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

The hospital hired Brohm as Director of Anesthesiology in January of 1994. A three-year contract provided that Brohm could be terminated without cause upon the giving of 120–days written notice. On June 23, 1995,

Timothy L. Jarm, the hospital's President and CEO, and Terri Graham, the hospital's Vice President of Professional Affairs, met with Brohm. In this meeting, Jarm notified Brohm that he was being suspended because Wanda Moore, the hospital's Operating Room Manager, filed a complaint alleging that Brohm had physically intimidated her and that a "verbal confrontation" ensued.

On June 27, 1995, Jarm presented Brohm with reports that Brohm was sleeping during surgical procedures while administering anesthetics. Brohm denied these reports and claimed that his colleagues may have perceived him to be snoring because of problems that often caused him to clear his sinuses. Jarm informed Brohm that the hospital was lifting Brohm's suspension from June 23, 1995, but was exercising its contractual right to terminate his employment with 120–days written notice. This meant that Brohm's termination would be effective on October 24, 1995.

On August 31, 1995, Jarm told Brohm that three doctors and a nurse had filed written complaints to the effect that Brohm had slept during four surgical procedures, at times "slack-jawed" and snoring. These complaints were filed in late August, with the last being filed on August 30, 1995. Brohm responded by telling Jarm that he was going to seek medical consultation regarding the possibility that he was suffering from chronic sleep deprivation caused by sleep apnea. This was the first time Brohm had ever mentioned that he might have a medical problem regarding his sleepiness.

Brohm asked that he be allowed to perform other tasks in the interim, such as conducting preoperative and postoperative rounds, helping operating-room staff manage the surgery schedule, and administering obstetrical anesthetics. Jarm, however, rejected this request and told Brohm that he was being suspended immediately. Brohm cautioned Jarm that because of the limited availability of doctors presently on duty, no one would be left to manage several patients then

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

receiving epidural anesthetics. Jarm relented and allowed Brohm to remain for several hours until another doctor became available to take over for him. Brohm was officially terminated the next day, on September 1, 1995, rather than the previously stated date of October 24, 1995.

Prior to September 1, 1995, Brohm made an appointment to see Dr. David H. Winslow, Jr. On September 7, 1995, after his termination, Brohm underwent a sleep study conducted by Dr. Winslow. This study revealed that Brohm suffered from severe chronic sleep deprivation secondary to obstructive sleep apnea. According to Dr. Winslow, Brohm is now dealing with his condition by wearing a Continuous Positive Airway Pressure (CPAP) nasal mask during sleep. Dr. Winslow said in his deposition that "we feel like his ... problem with sleepiness has been eliminated" and that Brohm would not have any problem continuing his employment duties so long as he uses the CPAP mask.

Brohm sued the hospital under the Kentucky Civil Rights Act, Ky.Rev.Stat. § 344.010, et seq., and under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. The district court granted summary judgment in favor of the hospital, finding that Brohm had put forth no evidence to support his allegation that he was fired because he had a disability, as opposed to being fired because he had slept during surgical procedures. Brohm now appeals this ruling.

## II. ANALYSIS

### A. Summary Judgment Standard

■ This court reviews a grant of summary judgment de novo. Terry Barr Sales Agency, Inc. v. All–Lock Co., 96 F.3d 174, 178 (6th Cir.1996). Summary judgment must be rendered pursuant to FED. R. CIV. P. 56(c) if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence and inferences must be construed in a light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

### B. Disability Discrimination

The key issue before us is whether the hospital fired Brohm because of his disability. Under the Kentucky Civil Rights Act, Ky.Rev.Stat. § 344.040(1), it is unlawful for an employer to

discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, ... because the person is a qualified individual with a disability....

As the district court explained, the language of the Kentucky Civil Rights Act mirrors the language of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 701, et seq. Both acts forbid discrimination on the basis of disability. See Maddox v. University of Tennessee, 62 F.3d 843, 846 n.2 (1995) (noting that the ADA parallels the protection of the Rehabilitation Act, and holding that the district court's reasoning with respect to the Rehabilitation Act claim applied with equal force to the ADA claim.). We will therefore analyze this case by reference to the ADA.

The ADA provides in pertinent part as follows:

§ 12112. Discrimination

(a) General rule. No covered entity shall discriminate against a *qualified individual with a disability because of the disability* of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112 (emphasis added).

■ To establish a prima facie case under the ADA, a plaintiff must show: (1) that he has a disability; (2) that he was otherwise qualified for his position; and (3) that the employer subjected him to discriminatory treatment solely by reason of his disability. Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1178 (6th Cir.1996). If an employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for fir-

ing him. *Maddox*, 62 F.3d at 846. Assuming that such a reason is given, the burden then shifts back to the employee to offer evidence that the proffered reason was in fact a pretext designed to mask discriminatory intent. *Id.*

■ The hospital concedes that Brohm has come forth with sufficient evidence to establish that he is disabled and "otherwise qualified." The hospital challenges, however, whether Brohm can prove that he was terminated "solely by reason of" his disability. Brohm argues that we should apply the Second Circuit's approach of allowing an employee to establish that he was fired solely by reason of his disability if he can show that he was fired for conduct that is "causally related" to his disability. *See Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511, 516–17 (2d Cir.1991) (claim brought under the Rehabilitation Act). In *Teahan*, the employer fired an employee who was an alcoholic because of his excessive absenteeism. The district court granted summary judgment in favor of the employer, holding that the employee was terminated because of his conduct, not because of his disability.

The Second Circuit reversed and remanded, holding that termination based on a factor closely related to a disability constitutes discrimination based solely on the disability. *Teahan*, 951 F.2d at 516. The court analogized the case to that of a hypothetical employee whose limp causes him to make a "thump" noise when walking. The court stated that the limping individual's employer should not be allowed to escape liability simply by articulating that he was fired because of his noisy "thump" rather than his limp. *Id.* The court noted, however, that termination on the basis of the "thump" would not constitute unlawful discrimination if the conduct rendered the employee unqualified. *Id.*

The district court properly rejected the *Teahan* approach in the present case. This circuit's decision in *Maddox v. University of Tennessee*, 62 F.3d 843 (6th Cir.1995), is the controlling precedent. In *Maddox*, a former assistant football coach for the University of Tennessee was fired after being arrested for driving under the influence of alcohol. The coach sued the University of Tennessee under the ADA and the Rehabilitation Act, alleging that his termination amounted to disability discrimination because driving while intoxicated was a "causally connected manifestation of the disability of alcoholism." *Id.* at 846. The district court granted summary judgment in favor of the University and dismissed the claims. This court affirmed, explaining that an employer may fire a person for his conduct even if that conduct is related to the employee's disability. *Id.* at 848. The court stated as follows:

> We ... hold that the district court correctly focused on the distinction between discharging someone for unacceptable misconduct and discharging someone because of the disability. As the district court noted, to hold otherwise, an employer would be forced to accommodate all behavior of an alcoholic which could in any way be related to the alcoholic's use of intoxicating beverages; behavior that would be intolerable if engaged in by a sober employee or, for that matter, an intoxicated but non-alcoholic employee.

*Id.* at 847 (emphasis added).

While *Teahan*'s reasoning might be appropriate in a case where an employee with a disability is discharged for conduct unrelated to his job responsibilities, such is not the present case. Brohm's conduct of sleeping while administering anesthetics severely diminished his ability to perform his job. Unlike the hypothetical limping employee, no reasonable inference may be made from the record in the present case that the hospital unfairly presumed that Brohm's disability would render him unqualified. Rather, the hospital had direct evidence that Brohm had been sleeping on the job, conduct which rendered him unqualified to perform his duties as an anesthesiologist.

Brohm argues that the facts of *Maddox* are distinguishable from the present case because driving while intoxicated, the conduct addressed in *Maddox*, is not an inevitable consequence of alcoholism. In other words, an alcoholic's compulsion to drink alcohol does not also compel him to drive while intoxicated. The facts of the present case, however, are not so different in that respect. One suffering from chronic sleep deprivation

may well be so tired that he cannot stay awake. But such sleep deprivation did not compel Brohm to administer anesthetics during surgical procedures when he knew he was tired.

■ Under *Maddox*, Brohm must offer evidence of discrimination based solely on his disability. *See Maddox*, 62 F.3d at 846. The fact that Brohm was terminated for sleeping on the job does not establish discrimination on the basis of his chronic sleep deprivation. *See id.* at 845. In Brohm's opposition to the hospital's motion for summary judgment, he argued that the hospital's knowledge that he may have suffered from chronic sleep deprivation raised a genuine issue of material fact. But evidence that an employer knows that an employee has a disability is not enough to establish that this knowledge was the basis for the termination.

Brohm also relies upon the fact that the hospital did not terminate him after the initial reports in June of 1995 that he had slept on the job, but only fired him on September 1, 1995, one day after he mentioned that he might have chronic sleep deprivation. This argument is flawed in two respects. First, Brohm did not tell Jarm on August 31, 1995 he *had* a disability; only that he *might* have one. Second, Brohm overlooks the fact that on June 27, 1995 the hospital notified him of its decision to terminate his employment effective October 24, 1995. This meeting took place long before Brohm ever mentioned the possibility that he had a disability. There is thus no basis to conclude that the hospital terminated Brohm because of his chronic sleep deprivation when the hospital did not even know he had the condition.

The only action taken by the hospital after Brohm indicated that he might be suffering from chronic sleep deprivation was that it moved up the date of his termination from October 24, 1995 to September 1, 1995. At best, this timing may raise a question as to whether the hospital fired Brohm earlier than planned because of the chance that Brohm had chronic sleep deprivation. Even viewing the facts in a light most favorable to Brohm, however, the only reasonable explanation as to why he was terminated early was because of the further reports that Brohm was found sleeping on the job. Although this early termination was not the usual procedure for discharging an employee, the hospital's personnel policy provided for such a step. The policy explained that sleeping on the job is an offense so serious that it warrants discipline outside the normal progression of termination.

If anything, the timing of events supports the conclusion that Brohm informed the hospital that he might have sleep apnea as an eleventh-hour attempt to save his job. There is simply no evidence that the hospital would have acted differently toward a physician who slept on the job for another reason, such as staying up late every night to watch television.

Brohm, therefore, has not established a prima facie case of disability discrimination. Even had he done so, the hospital has offered a legitimate explanation for firing Brohm— the fact that it is unsafe to employ an anesthesiologist who sleeps while performing his duties. The burden therefore shifts back to Brohm to offer evidence that the hospital's justification for terminating him was a pretext intended to mask unlawful, discriminatory intent. *See Maddox*, 62 F.3d at 846.

■ Brohm argues that if he had truly been terminated for sleeping on the job, then on August 31, 1995 Jarm would not have allowed him to cover labor epidurals until another doctor was available to do so. He claims that Jarm would have required him to leave immediately. But this argument is disingenuous. Jarm did request that Brohm leave immediately, but Brohm told Jarm that nobody else was available to oversee the administration of epidural anesthetics to several patients. It was only at Brohm's urging that Jarm allowed him to remain on duty until another doctor was available to take over Brohm's work. Jarm obviously decided that allowing Brohm to monitor the patients receiving epidurals was preferable to allowing those patients to be left completely unattended. Further, Brohm assured Jarm that his alleged condition would not affect his ability to perform certain tasks such as covering obstetrical anesthesia. On these facts no reasonable juror could conclude that

Jarm's decision to allow Brohm to remain a few additional hours until another doctor was available is evidence that Jarm's concern over Brohm sleeping on the job was a pretext to mask the hospital's discriminatory intent.

## C. Family Leave Act

Brohm also argues that the hospital violated the Family Medical and Leave Act, 29 U.S.C. § 2612(a)(1)(D) ("FMLA"), by refusing to provide him medical leave and allow him to return after treatment for sleep apnea. The FMLA provides in pertinent part as follows:

§ 2612. **Leave Requirement**

**(a) In general.**

(1) Entitlement to leave. Subject to section 2613 of this title, an *eligible employee* shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:

. . .

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(emphasis added).

The district court summarily dismissed this claim on the basis that Brohm never requested leave during the time of his employment, that he was lawfully terminated, and that any treatment he received after being terminated was irrelevant because he was no longer an employee of the hospital.

■ The district court's reasoning is supported by the language of the FMLA and its regulations. First, the statute affords a remedy only to eligible *employees*. 29 U.S.C. § 2612(a)(1) ("an eligible employee shall be entitled to a total of 12 work weeks. . . ."). Brohm was not an "eligible employee" at the time he received medical attention for his condition. He had already been terminated a week earlier.

■ Second, nothing in the statute places a duty on an employer to affirmatively grant leave without such a request or notice by the employee. Rather, to invoke the protection of the FMLA, an employee must pro-

vide notice and a qualifying reason for requesting the leave. *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir. 1995). While the employee need not actually mention the FMLA by name, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Id.* at 764; *see* 29 U.S.C. § 2612(e)(2) (requiring employees to give 30 days' notice for foreseeable treatment of serious health conditions). Brohm offers no evidence that he requested medical leave while he was employed by the hospital. The district court therefore properly dismissed Brohm's claim under the FMLA.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.