OPINION
{¶ 1} Terry Ann Cox is appealing from the decision of the trial court granting the motion of defendant Kettering Medical Center for summary judgment on Ms. Cox's complaint for discharging her by the Kettering Medical Center.
 {¶ 2} On appeal she asserts the following two assignments of errors:
 {¶ 3} "1. THE TRIAL COURT ERRED IN FINDING THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER OR NOT THE DEFENDANT DISCRIMINATED AGAINST THE PLAINTIFF BASED ON A PERCEIVED DISABILITY."
 {¶ 4} "2. THE TRIAL COURT ERRED IN IGNORING THE FACTUAL RECORD
 {¶ 5} AND FINDING THAT PLAINTIFF COULD NOT ADEQUATELY PERFORM HER JOB."
 {¶ 6} The facts of the matter and the legal analysis by the trial court of its decision granting Kettering Medical Center's motion for summary judgment are found in its opinion, as follows:
"FACTS
 {¶ 7} "In January of 2002 Kettering Medical Center terminated the employment of Ms. Terry Cox. (Pls.['] Comp. ¶ 3). Ms. Cox worked at Kettering Medical Center as an at-will employee for approximately twenty-three years in the neonatal intensive care unit. Id. During her last year of employment Ms. Cox's work performance deteriorated due to a litany of medical problems. Ms. Cox was diagnosed with Chronic Fatigue Syndrome in 1986, Fibromyalgia in 1994, Hypothyroidism in 1994, Allergies in 1988, and Migraines since the third grade. (Cox Dep. ¶ 41-74). It appears the Chronic Fatigue, Hypothyroidism, and Allergies, were diagnosed on the basis of Ms. Cox's outward symptoms but lab tests revealed no such disorders. Id. at 44, 51, 58-59. Regardless, Ms. Cox had been able to work normally, with a few exceptions, until 2001. Those exceptions were a result of sleeping on the job, as well as being inattentive, and generally unaware, while performing her duties. (Cox Dep. ¶ 74-119; Def. Ex. C, D, E, F, G, H, I, J).
 {¶ 8} "Ms. Cox's problems with sleeping on the job increased a great deal in 2001. In August, Bruce Warren, a Respiratory Therapist who was paired with Ms. Cox in the treatment of a high-risk baby, reported problems with Ms. Cox's performance. (Reichhardt Aff. ¶ 4). He stated that Ms. Cox dismissed a baby's health problems and wanted to release the baby to its parents, when, in fact, the baby had to be moved to the Intensive Care Nursery. Id. He observed that Ms. Cox was inattentive, needed step-by-step instructions on how to treat the baby, and seemed tired. Id. In November, Jenny Thorn, another Respiratory Therapist, also reported problems with Ms. Cox's performance. (Reichhardt Aff. ¶ 5; (Def. Ex. S). She reported that plaintiff left several times during her shift for long periods of time to sleep, even though the nursery was minimally staffed, and, as a result, she was tardy in responding to a call for emergency assistance. Id.
 {¶ 9} "During this time, plaintiff's supervisor, Ms. Reichhardt, met with her twice to discuss her performance problems, and offered to move her to a different shift to help combat those problems, but plaintiff wanted to stay on the night shift. (Pls.['] Comp. ¶ 2-3; Cox Dep. ¶ 175, 179-180; Def. Ex. T; Reichhardt Aff. ¶ 6). A month after Ms. Reichhardt's last meeting with Ms. Cox, Marguerite Hotz, a Registered Nurse in plaintiff's department, reported that the plaintiff continued to sleep on duty, making her late to respond to emergency calls. (Hotz Aff. ¶ 3; Cox Dep. ¶ 189-190; Def. Ex. B, W). "This series of reports culminated in Ms. Cox's termination from employment with the Kettering Medical Center in January of 2002. Ms. Cox now seeks relief against Kettering Medical Center under federal and state disability discrimination laws, common law wrongful discharge, breach of implied contract, intentional infliction of emotional distress, and promissory estoppel.
 {¶ 10} [The court then analyzes the summary judgment standard applicable in such a trial court decision].
"DISCUSSION
 {¶ 11} "I. Disability Discrimination and Wrongful Discharge
 {¶ 12} "The Americans with Disabilities Act (ADA) prohibits employment discrimination on the basis of disability. An individual is considered to have a disability if that individual either:
 {¶ 13} "(1) has a physical or mental impairment which substantially limits one or more of that person's major life activities, (2) has a record of such an impairment, or, (3) is regarded by the covered entity as having such an impairment.
 {¶ 14} 42 U.S.C. § 12102(2). {¶ 15} "Plaintiff claims that the defendant terminated her employment because it `regarded' her as having `a physical or mental impairment which substantially limit[ed] one or more of [her] major life activities' and/or because she had a `record of' such an impairment. Plaintiff does not claim that she actually suffers a disability — a physical or mental impairment which substantially limits one or more of that person's major life activities. (See Pls.['] Comp.)
 {¶ 16} "Plaintiff has presented no evidence that she has a `record of' disability. The EEOC's Interpretative Guidance states that: `The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability. For example, this provision protects former cancer patients from discrimination based on their prior medical history.' 42 U.S.C. § 12102(2)(A). Unlike a former cancer patient, the plaintiff has never had a disability, and thus has no `record of' a substantially limiting impairment. (See Cox Dep. ¶ 68-71). Therefore, plaintiff cannot claim protection under the ADA's `record of' prong.
 {¶ 17} "In addition, plaintiff has not shown that the defendant `regarded' her as disabled. An employee is considered `regarded as' disabled when:
 {¶ 18} "(1) a covered entity mistakenly believes that a person has [an] . . . impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or
 {¶ 19} more major life activities. Sutton v. United Air Lines, Inc.
(1999), 527 U.S. 471, 483.
 {¶ 20} "In other words, the covered entity (Kettering Medical Center), must have incorrectly believed that plaintiff had an impairment, or, correctly believed that she had an impairment, but incorrectly believed that that impairment was substantially limiting.
 {¶ 21} "The evidence shows only that the defendant believed that Ms. Cox slept on the job. (Pls. Ex. 8, 10, 12, 13, 14, 15). Ms. Cox does not allege that the defendant was mistaken in that belief — she admits to repeatedly sleeping on the job. (See Cox Dep. ¶ 188-194; Def. Ex. W). The question then, is whether the defendant believed that the plaintiff's sleepiness was an impairment that substantially limited her in a major life activity? Plaintiff asserts that her supervisors regarded her as substantially limited in the major life activity of working as a Registered Nurse in the Intensive Care Nursery (Pls.['] Surreply to Def.['] Mem. in Supp. of Summ. J. ¶ 4). `When the major life activity under consideration is that of working, the statutory phrase `substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice.' Sutton v. United at 491, 492.
 {¶ 22} "Therefore, to prove that the defendant believed that plaintiff's sleepiness was an impairment that substantially limited her in the major life activity of working, plaintiff must show that the defendant regarded her as unable to work in a broad class of jobs, not just the specialized job she held. Unlike other nursing positions, plaintiff's position required her to work with at-risk newborns in need of immediate medical attention and, as plaintiff admits, `if you are not awake and alert the safety of the baby could be compromised.' (Cox Dep. ¶ 40). The evidence shows that the defendant regarded her as able to work her current job as a Registered Nurse in the Intensive Care Nursery, with schedule changes to combat her sleepiness and general inattentiveness. The plaintiff's supervisor, Elizabeth Reichhardt, met with her twice and offered both times to change her schedule from night shift to day shift, and/or give her a leave of absence to help her combat her sleepiness, but the plaintiff refused (Cox Dep. ¶ 137-152, 180; Def. Ex. T). Based upon this evidence, the plaintiff has not created an issue of fact concerning whether defendant regarded her as substantially impaired in the major life activity of working as a registered nurse.
 {¶ 23} "Further, even if a plaintiff establishes a prima facie case of disability discrimination, a defendant will not be held in violation of the ADA if it had a `legitimate, nondiscriminatory reason for firing [the plaintiff].' Brohm v. JH Properties (6th Cir. 1998), 149 F.3d 517, 521. InBrohm an anesthesiologist was fired for sleeping on the job; the court found that he was not disabled and that, even if he had been disabled, his employer offered a legitimate explanation for firing him, which was the fact that it was unsafe to employ an anesthesiologist that sleeps while on duty. The same reasoning applies here.
 {¶ 24} "Plaintiff admits that her job required her to be alert, and, at the very least, present (Cox Dep. ¶ 40). Several of plaintiff's co-workers reported that her sleepiness affected the quality of her work and endangered the newborns she treated (Cox Dep. ¶ 137; Def. Ex. S; Reichhardt Aff. ¶ 4-5). Plaintiff's poor work performance and the importance of ensuring the safety of her newborn patients, constituted a legitimate, nondiscriminatory reason for her termination. In addition, the defendant's knowledge of plaintiff's ailments is not evidence that they fired her solely because of those ailments: `evidence that an employer knows that an employee has a disability is not enough to establish that this knowledge was the basis for the termination.' Brohm
at 522. In conclusion, the defendants had a legitimate, nondiscriminatory reason to terminate plaintiff's employment, and that reason was not a mere pretext. Plaintiff, in short, has not met her reciprocal duty under Rule 56(E) to create a factual issue concerning whether her termination was based upon a legitimate, nondiscriminatory reason.
 {¶ 25} "Plaintiff's claims for employment discrimination under O.R.C. § 4112.02, and common law Wrongful Discharge, necessarily fail with her claims under the ADA. (See Plant v. Morton (6th Cir. 2000), 212 F.3d 929,938-39; City of Columbus v. McClone, 82 Ohio St. 3d 569). In addition, because this court finds that the defendant had a legitimate, nondiscriminatory reason for terminating the plaintiff's employment, we cannot find that the defendant's actions violated a clear public policy in violation of common law Wrongful Discharge. (See Painter v. Graley
(1994), 70 Ohio St. 3d 377).
"II. Claims in Contract and Quasi-Contract
 {¶ 26} "Kettering Medical Center's employee handbook precludes all claims by plaintiff under Contract or Quasi-Contract. `Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.' Wing v. Anchor Media
(1991), 59 Ohio St.3d 108, 110. The Second District Court of Appeals also has held that such disclaimers `negate any inference of contractual obligations between the parties.' Shepard v. Griffin Services,
2002 Ohio 2283, at ¶ 61. (See also, Napier v. Centerville City Schools, Montgomery App. No. 20185). Plaintiff was an at-will employee but she asserts that she was entitled to the benefit of certain procedures outlined in the employee handbook prior to her termination (Pls.['] Comp. ¶ 5). However, the handbook, on the first page, provides:
 {¶ 27} "This handbook does not constitute, and is not intended to constitute, a contract . . .
 {¶ 28} "Employment is for an indefinite duration and can be terminated, at will, by KMC or by the employee.
 {¶ 29} "Plaintiff was terminated in accordance with this disclaimer and she has no implied contractual rights under the remaining provisions of the handbook. The disclaimer also prevents plaintiff from asserting promissory estoppel — no promises were made to her other than that she could be terminated at will.
"III. Intentional Infliction of Emotional Distress
 {¶ 30} "Intentional Infliction of Emotional Distress consists of four elements:
 {¶ 31} "(1) the defendant intended to cause emotional distress to the plaintiff; (2) the defendant's conduct was so extreme and outrageous as to go beyond the bounds of decency and when such conduct can be considered utterly intolerable in a civilized society; (3) defendant was theproximate cause of the plaintiff's psychiatric injury; and (4) the mental anguish suffered by the plaintiff is so serious and of a nature that noreasonable person can be expected to endure.
 {¶ 32} Langford v. Emergency Pet Clinic (8th App. Dist. 1994),96 Ohio App.3d 174, 178 (emphasis added).
 {¶ 33} Unfortunately, people get fired every day, and suffer mental anguish as a result. However, absent evidence of extreme and outrageous conduct in the termination of an employee, no cause of action for Intentional Infliction of Emotional Distress will arise. This court has already determined that the plaintiff was an employee at-will, and, as such, could be fired at any time. Additionally, the defendant had a legitimate, nondiscriminatory, reason for terminating the plaintiff's employment. Such conduct cannot be considered extreme and outrageous, and will not give rise to a cause of action for Intentional Infliction of Emotional Distress.
"CONCLUSION
 {¶ 34} "For the foregoing reasons, Defendants' motion for summary judgment is sustained."
 {¶ 35} Appellate review of a decision by a trial court granting summary judgment is de novo. Citations omitted. We have reviewed the entire record in this case and we find that the trial court's decision granting summary judgment is more than supported by the facts of the matter and the applicable law. We hereby approve the trial court's decision and adopt it as our own.
 {¶ 36} The assignments of error are overruled and the judgment is Affirmed.
Brogan, P.J., and Wolff, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)