Edward **JOHNSON,** Plaintiff,

v.

**KMART, et al.,** Defendants.

Civil Case No. 07–14393.

United States District Court, E.D. Michigan, Southern Division.

Jan. 7, 2009.

Joseph A. Golden, Kevin M. Carlson, Pitt, McGehee, Royal Oak, MI, for Plaintiff.

Barbara E. Buchanan, Terrence J. Miglio, Keller Thoma, Detroit, MI, for Defendants.

### ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STEPHEN J. MURPHY, III, District Judge.

Before the Court is the defendants' motion for summary judgment, filed on August 8, 2008. On December 9, 2008, the Court held a hearing on the motion for summary judgment. Having reviewed the motion for summary judgment and the relevant portions of the record, the Court denies the defendants' motion for summary judgment for the reasons stated below.

## BACKGROUND

This case involves a claim for employment discrimination and retaliation by an employee against his former employer for termination in violation of the Family Medical Leave Act, 29 U.S.C. § 2615(a)(2) ("FMLA"). The plaintiff Edward Johnson was formerly employed by the defendant Kmart/Sears Holding Corporation ("Kmart") as a loss prevention associate. Kmart used a six-point infraction-based system for monitoring and punishing tardiness and absenteeism by its employees. Under the system, an employee would receive one infraction point for each instance of unexcused absence from work and ½ point for each incident of tardiness. An infraction point remained on an employee's attendance record for six months, and Kmart reserved the right to terminate employees who accrued six infraction points in any six-month period. The plaintiff Johnson had received and signed a copy of the policy when he began work. Prior to the events of Saturday, February 17, 2007, Johnson had accrued 5½ infraction points.

On Saturday, February 17, 2007, Johnson was scheduled to work from 2:00 p.m. until the store's closing at 10:00 p.m. At 1:30 p.m., as he was preparing to go to work, Johnson received a call from his wife's cousin, Holly Abernathy, who was watching the Johnson children. Abernathy told Johnson and his wife, Gloria Johnson, that their six-year-old son Eddie had been hurt by Abernathy's dog; Eddie's

eye had been cut by the dog and was bleeding. Edward Johnson dep. 81–83.

Pursuant to a Kmart policy regarding unexpected absences, Johnson called the store and notified assistant store manager William Talley that Johnson had to drive his son to the emergency room, that he would not be able to make his shift, but that he would try to get to work later if he was done at the hospital in time. *Id.;* Talley memo of March 8, 2007 (Exh. 7 to Plaintiff's Response to Summary Judgment Motion). Talley told Johnson not to worry about it, but to "get your son to the hospital." Edward Johnson dep. 86.

The Johnsons first took Eddie to Clarkston Ambulatory Center, which was close to the Abernathy house, but the ambulatory center refused to see Eddie because the Johnsons did not have Eddie's insurance card with them. *Id.* at 84. The Johnsons then took Eddie to the emergency room at St. Joseph Mercy Hospital in Pontiac, Michigan. *Id.* The doctors there diagnosed Eddie with a "left subconjunctival hemorrhage" and wrote that he appeared to have a "ruptured globe in the medial portion of the eye." Hospital records (Exh. 8 to Plaintiff's Response to Summary Judgment Motion). The St. Joseph Mercy doctors felt that Eddie needed to be seen immediately by an ophthalmologist at Beaumont Hospital, in Royal Oak, Michigan. Eddie was then driven to Beaumont hospital by his parents where he was seen by the ophthalmology resident at Beaumont. The consultation form for the ophthalmologist indicates that Eddie was being seen because of a possible ruptured globe. Beaumont Medical Records (Exh. 9 to Plaintiff's Response to Summary Judgment Motion). The diagnosis of the ophthalmology resident was that Eddie had a subconjunctival laceration (a cut on the white portion of the eye) and a subconjunctival hemorrhage ("a collection of

blood on the white portion of his eye surrounding the laceration"). *Id.* The ophthalmologist concluded that Eddie did not have a ruptured globe. *Id.* The ophthalmologist gave Eddie an eyepatch and told the Johnson to keep the eyepatch on Eddie for 24 hours except when they were administering his antibiotics. Gloria Johnson dep. 29–30. The ophthalmologist discharged Eddie with instructions for him to return for a follow-up appointment, and for his parents to call sooner if he showed a decrease in visual acuity, or an increase in pain or any spots, curtains, or flashes. *Id.* Eddie was discharged from the hospital and the Johnsons returned home at approximately 8:00 p.m. that night. Johnson did not report back to work for the final two hours of his shift ending at 10:00 p.m.

The following day, Sunday, February 18, Johnson worked the entire day as he was scheduled to do. Edward Johnson dep. 86–87. Johnson testified that he spoke to the store HR manager Kim Matthews about taking his son to the emergency room the previous day and that he showed her pictures of his son's eye injury. *Id.* at 87. Johnson also told Matthews that he had paperwork from the hospital if she needed it, but Matthews told Johnson "don't worry about it." *Id.* at 87–90. Matthews testified that Johnson told her he had a doctor's note, but that she told him to bring it in the next time he worked. Matthews dep. 90. She testified that she never followed up with him about it because that was management's responsibility. *Id.* Jeanette Streetman, the store "coach", or manager, testified that Matthews told her that Matthews had requested documentation from Johnson because he said he was in the emergency room, and that Matthews had waited for the documentation but never received it. Streetman dep. 59. Apparently, no one from Kmart notified Johnson that his absence

might be protected by the FMLA. Edward Johnson dep. 142.

Matthews notified Streetman that Johnson's absence on February 17 was his sixth point under the Kmart absence control policy. Matthews dep. 33, 39; Streetman dep. 59. According to Matthews, Streetman questioned whether Johnson should receive an infraction point because "he said his son got bit," but Streetman testified that she never suggested or acted upon the possibility that Johnson's absence was protected by the FMLA. Matthews dep. 34; Streetman dep. 67.

Streetman contacted Joe McCreery, the Kmart district "coach" and asked his approval of the decision to fire Johnson for his sixth infraction. Streetman never told McCreery the reason Johnson had given for his absence and never suggested to McCreery that Johnson's absence may have been covered by FMLA, and McCreery never asked. Streetman dep. 67. When McCreery asked Streetman "if the infraction was clean, if there were any other circumstances to the infraction," Streetman answered "no." McCreery dep. 31.

Streetman terminated Johnson on Friday, February 22, 2007 for his absence the previous Saturday. Edward Johnson dep. 88. Streetman told Johnson that the reason for 4 his termination was his violation of Kmart's absence control policy. *Id.* After being informed of the decision, Johnson asked whether she was doing so "even though it was because I had to rush my son to the hospital." *Id.* Johnson also told Streetman that he had the paperwork from the hospital if she needed to see it, but Streetman told him that she did not need to see the paperwork and "it doesn't matter, I don't care." *Id.*

Subsequently, Johnson brought this suit against the defendants, alleging that he was terminated in violation of the FMLA.

## LEGAL STANDARD

The defendants filed a motion for summary judgment pursuant to the Federal Rules of Civil Procedure. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The nonmoving party, however, must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), aff'd, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

Here, the defendants have filed a motion for summary judgment. Accordingly, the Court views the facts and resulting inferences in the light most favorable to the nonmoving plaintiff Edward Johnson.

## ANALYSIS

The defendants have moved for summary judgment on three grounds: first, that the injury to Johnson's son was not a "serious health condition" within the meaning of the FMLA; second, that even if the injury was a "serious health condition," Johnson's failure to show up for the final two hours of his shift was a legitimate, nondiscriminatory reason for the termination; and third, that Johnson's failure to provide certification that he was absent for work to care for a family member with a serious health condition precludes an action under the FMLA.

■ The second and third arguments are easily disposed of as being without merit. Regarding the defendants' second argument, the evidence is that once Johnson returned to work he remained home with his son while his wife went to the pharmacy and filled Eddie's prescriptions. The regulations define "needed to care for" a family member to include both physical and psychological care, and includes providing psychological comfort to a child with a serious health condition receiving home care. 29 C.F.R. § 825.116. Considering the facts in the light most favorable to the plaintiff Johnson, there is sufficient evidence in the record to show that Johnson was needed to care for his son Eddie during the night of February 17. Accordingly, summary judgment in favor of the defendants is not appropriate on this ground.

■ Regarding the defendants' third argument, the Department of Labor regulations specifically require the employer to give specific written notice of an employee's obligations under the FMLA, including any duty to submit medical certification and the consequences for failing to do so. *Perry v. Jaguar of Troy*, 353 F.3d 510, 514 (6th Cir.2003) (citing 29 C.F.R. § 825.301(c)(2)). In order to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting leave. *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). There is, however, no requirement that an employee expressly invoke the FMLA. Rather, the Sixth Circuit has held that "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523. Thus, the burden is on the employer to request medical certification when it is aware of facts that indicated that a leave might be covered by the FMLA. *See Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir.2003) (holding that employers cannot deny FMLA relief for an employee's failure to comply with the employer's internal notice requirements). The evidence before the Court is that Johnson offered Streetman documents supporting his claim that he took Eddie to the emergency room, but that Streetman declined them, saying they didn't matter. Therefore, the defendants' third argument in favor of summary judgment also fails.

The only remaining issue is whether Eddie suffered from a "serious health condition" on February 17, 2007, entitling Johnson to the protections of the FMLA. Upon review of the applicable regulations, the Court finds that the condition of Johnson's son Eddie on February 17, 2007 does satisfy the requirements of a "serious health condition" and that Johnson is entitled to FMLA protection.

The FMLA creates the right in eligible employees to a total of twelve workweeks of leave during any twelve-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(c). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The FMLA also provides a private right of action to employees whose rights under the FMLA have been violated. 29 U.S.C. § 2617(a).

The FMLA grants the Secretary of Labor the authority to promulgate regulations implementing the Act. 29 U.S.C. § 2654. With respect to the meaning of "serious health condition" for purposes of the FMLA, the following regulation at 29 C.F.R. § 825.114, was promulgated:

(a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

. . . .

(2) Continuing treatment by a health care provider. **A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:**

(i) **A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days,** and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

. . . .

(v) **Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider** or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or **for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment,** such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

. . . .

(b) **Treatment for purposes of paragraph (a) of this section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition.** Treatment does not include routine physical examinations, eye examinations, or dental examinations. Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring spe-

cial equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

29 C.F.R. § 825.114 (emphasis added).

The key question facing the Court is whether Eddie had a "serious health condition" under the FMLA when his father took Saturday, February 17, 2007 off from work to take Eddie to the hospital. It is undisputed that the reason that Johnson was terminated on February 22, 2007 was that his absence on February 17 caused him to accrue in excess of six infraction points. If Eddie's condition was a "serious health condition" within the meaning of the FMLA, then the plaintiff Johnson's absence on February 17 was covered by the FMLA, he was entitled to take leave, and Kmart was in violation of the FMLA by terminating him.

■ In a claim under the FMLA, it is the employee's burden to establish the objective existence of a "serious health condition." *Bauer v. Varity Dayton–Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir.1997). Kmart argues that to establish Eddie's condition as a "serious health condition," Johnson would have to show that Eddie was incapacitated for a period of more than three days and that he was treated two or more times or was treated at least once resulting in a regimen of continuing treatment. Kmart argues that Johnson cannot show that Eddie was incapacitated in this way and thus, Johnson is not protected by the FMLA and summary judgment is appropriate for the defendants.

■ Here, the record does not clearly establish that Eddie was incapacitated for more than three days. Gloria Johnson testified that she was instructed by the physician to keep Eddie relaxed and to avoid rambunctious play, and that "he laid on the couch for a few days, watched his movies, read books" and that she kept him away from his play dates. Gloria Johnson dep. 31. She also testified that she had kept him from playing with his brother for "a rough couple of days." *Id.* at 33. The physician's assistant that assisted in treating Eddie at Beaumont testified that the special instructions section of Eddie's discharge instructions contained no limitations on Eddie's activities. Sudbury dep. 28. The assistant was unable to testify as to what the consequences might have been had Eddie not had his conjunctival laceration treated that day. *Id.* at 21. Consequently, as there is no medical testimony that Eddie was required to refrain from activities for more than three days, and the testimony of Eddie's parents does not clearly demonstrate an incapacity for more than three days, the Court finds that Johnson has not shown that Eddie was incapacitated as described in 29 C.F.R. § 825.114(a)(2)(i).

■ Nevertheless, the fact that the plaintiff Johnson has demonstrated that Eddie was incapacitated for more than three days is not fatal to his claim. Johnson also argues in the alternative that his absence on February 17 was covered by the FMLA because at the time he requested leave, Eddie was suffering from a "serious medical condition" as described by 29 C.F.R. § 825.114(a)(2)(v). Subsection (a)(2)(v) does not require any specific period of incapacity, unlike subsections (a)(2)(i) through (iv). Instead, subsection (a)(2)(v) provides that a "serious health condition" includes

(v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment."

29 C.F.R. § 825.114(a)(2)(v).

Here, in this case, Johnson can establish that Eddie had a serious health condition under subsection (a)(2)(v) if he can show (1) multiple treatments, (2) by a health care provider, (3) for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment.

Johnson meets the first two elements: the evidence shows that Eddie was seen by at least two doctors and several other health care professional at two hospitals in a single day, and was seen by his own pediatrician four days later for the same condition. The question is whether Johnson has presented enough evidence to meet the third element, that he was treated "for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment." 29 C.F.R. § 825.114(a)(2)(v).

Johnson argues that the Court should consider Eddie's condition when he first arrived at the emergency room, namely, the possibility that Eddie was suffering from a ruptured globe. Johnson argues that the doctors at St. Joseph's Hospital concluded that Eddie was likely suffering from a ruptured globe, a condition that, if left untreated, could cause blindness. This was the diagnosis for which the ophthal-mologist at Beaumont Hospital evaluated Eddie. Johnson argues that the Court should look at the plaintiff's knowledge at the time he requested leave, and his belief, supported by the objective medical opinion, that Eddie might have a ruptured globe.

In response, the defendants argue that the Court should only consider how serious the injury turned out to be in actuality. The defendants argue that regardless of how serious the injury appeared at the outset, the injury was not a ruptured globe, but instead was a subconjunctival laceration and subconjunctival hemorrhage, and that there is no evidence in the record that such a condition would likely result in more than three days' incapacity if left untreated.

After considering the parties' positions, the Court concludes that the plaintiff has the stronger argument. The Court finds the cases of *Thorson v. Gemini*, 205 F.3d 370 (8th Cir.2000) and *Woodman v. Miesel Sysco Food Service Co.*, 254 Mich. App. 159, 657 N.W.2d 122 (2002), cited in support of the plaintiff's position, to be persuasive. In these cases, the courts reasoned that "treatment" under the regulations includes "examinations to determine if a serious health condition exists or evaluations of the condition." 29 C.F.R. § 825.114(b); *see also Woodman*, 254 Mich.App. at 176, 657 N.W.2d 122; *Thorson*, 205 F.3d at 379. These courts rejected the argument that FMLA protection only occurs if the employee actually suffered from a serious health condition.

In this case, ultimately Johnson's son Eddie was found to not be suffering from a serious health condition which required a period of incapacity. When Eddie was first injured, however, it was reasonable for the plaintiff Johnson to believe that Eddie was suffering from a serious health

condition with his bleeding eye. Additionally, the initial diagnosis at St. Joseph's hospital was that Eddie had a possible ruptured globe, which is a serious health condition which would lead to a period of incapacity of more than three consecutive calendar days in the absence of medical treatment. Because of the seriousness of this diagnosis, it was necessary to evaluate Eddie as soon as possible, and so, Eddie was immediately sent to see a specialist at Beaumont. Based on the reasoning of the *Thorson* and *Woodman* cases, these examinations to evaluate Eddie's eye and possibly ruptured globe fall within the meaning of "treatment" for a serious health condition. Consequently, the Court finds that the plaintiff Johnson has satisfied the requirements of 29 C.F.R. § 825.114(a)(2)(v) and that the leave that Johnson sought on February 17, 2007 was protected by the FMLA.

### CONCLUSION

In conclusion, the Court finds that, on February 17, 2007, Johnson's son Eddie was receiving multiple treatments by a health care provider for a condition that would likely result in a period of incapacity for more than three consecutive calendar days in the absence of medical intervention. Thus, Johnson's son had a serious health condition, entitling Johnson to the protections of the FMLA. The defendants are not entitled to summary judgment in their favor.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment [docket entry # 17] is **DENIED.**

**SO ORDERED.**