*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OTIS HOLT,

        Plaintiff-Appellee,

v

CITY OF DETROIT and ERIC JONES,

        Defendants-Appellants.

UNPUBLISHED
April 29, 2021

No. 352163
Wayne Circuit Court
LC No. 18-013236-CD

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Defendants appeal, by leave granted, the partial denial of their motion for summary disposition.[1] We reverse and remand for entry of summary disposition in favor of defendants on all of plaintiff's claims.[2]

Plaintiff held the position of Second Deputy Fire Commissioner with the City. He took a leave of absence from his position under the FMLA from June 7, 2016 to September 7, 2016. When his FMLA leave period ended, the medical professional who was treating plaintiff provided a letter to the City that plaintiff should be allowed to remain on "extended medical leave." Pursuant to the City's Human Resources Rules, the City began to investigate the request for a medical leave

---

[1] *Holt v Detroit*, unpublished order of the Court of Appeals, entered February 12, 2020 (Docket No. 352163).

[2] In his responsive brief on appeal, plaintiff asserts that the trial court erred by dismissing his claim for age discrimination. Plaintiff did not file his own application for leave to appeal that decision or file a cross-appeal. This Court's order granting defendants' application for leave to appeal limited the issues to those raised in that application and supporting brief. Moreover, as an appellee who has not sought to cross-appeal, plaintiff cannot obtain a decision more favorable than was rendered by the trial court. *Reidenbach v Kalamazoo*, 327 Mich App 174, 181-182; 933 NW2d 335 (2019). Accordingly, this Court does not have jurisdiction to review the dismissal of plaintiff's claim for age discrimination.

of absence and plaintiff was asked to appear for an independent medical examination (IME) by Dr. Gerald Shiener on October 13, 2016. Plaintiff appeared for that examination and Dr. Shiener requested that plaintiff submit to a complete blood count (CBC) test.

While arrangements were made to set up the CBC test, on October 21, 2016, plaintiff informed the City that he would be retiring and, for that reason, he would not need to appear for the CBC test. During the interim, plaintiff inquired whether he could use accumulated sick leave to remain off work until he reached his 25th work anniversary in March 2017, so he could retire with 25 years of service. It is unclear whether plaintiff received appropriate responses or guidance from the Human Resources staff about the use of sick leave. The only written request concerning sick time that was provided as evidence was dated November 9, 2016—after plaintiff had submitted his retirement notice. Plaintiff was also in communication with the Pension Board about his retirement, but his supervisor, Eric Jones, denied being aware that plaintiff was under the care of a doctor because plaintiff did not communicate about his absence with Jones or the executive staff.

The Human Resources representative working with the Fire Department also was not officially notified of plaintiff's retirement until after November 2016. Consequently, in November 2016, Jones sent plaintiff a letter advising him that his appointment as Second Deputy Fire Commissioner was withdrawn, which meant that plaintiff reverted back to the last position he held. The Human Resources representative also sent plaintiff a letter in November 2016, advising him that he was considered absent without leave for not appearing for the CBC test. Plaintiff was able to retire, but he had less than 25 years of service and he did not retire from the position of Second Deputy Fire Commissioner, resulting in a lower pension. Instead of using his accumulated sick leave to extend his years of service, plaintiff was paid for the value of his accumulated sick leave after he retired.

Thereafter, plaintiff brought this action against the City and his former supervisor, Eric Jones, alleging violations of the FMLA and the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*., age discrimination under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*., public-policy violations, and violation of his rights under the Fourteenth Amendment, contrary to 42 USC 1983. The trial court granted defendants' motion for summary disposition with respect to the age discrimination claim, but denied the motion with respect to plaintiff's remaining claims.[3] This appeal followed.

## I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a complaint by the pleadings alone. *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). Summary

---

[3] The court did dismiss the 42 USC 1983 claim against the City, but denied dismissal of that claim against defendant Jones

disposition is appropriate only if the claims are so clearly unenforceable as a matter of law that no factual development could justify recovery. *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010).

A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003).

## II. FAMILY MEDICAL LEAVE ACT

Defendant first asserts that plaintiff did not establish a prima facie case of FMLA discrimination. We agree.

The FMLA allows employees to take up to 12 weeks of unpaid leave during any 12-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 USC 2612(a)(1)(D). "The FMLA makes it 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under' the FMLA." *Woodman v Miesel Sysco Food Serv Co*, 254 Mich App 159, 166-167; 657 NW2d 122 (2002), quoting 29 USC 2615(a)(1).

The FMLA also provides that an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA, 29 USC 2615(a)(2). To establish a prima facie claim for retaliation under this provision of the FMLA, a plaintiff is required to show that

> (1) she availed herself of a protected right under the FMLA by notifying [her employer] of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. [*Edgar v JAC Prod, Inc*, 443 F3d 501, 508 (CA 6, 2006).]

It is appropriate to apply the burden-shifting test articulated in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), to retaliation claims under the FMLA that are based solely upon circumstantial evidence. *Edgar*, 443 F3d at 508. Under this approach, once a plaintiff establishes a prima facie FMLA claim, the burden shifts to the employer to offer a legitimate, nondiscriminatory rationale for the adverse employment action. *Id*. If the employer succeeds, the burden shifts back to the employee to show that the employer's proffered reason was a pretext for discrimination. *Bryson v Regis Corp*, 498 F3d 561, 570 (CA 6, 2007).

When a retaliation claim is based on direct evidence, however, the employee is not required to disprove other possible nonretaliatory reasons for the adverse action; the burden simply shifts

to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive. *Daugherty v Sajar Plastics, Inc*, 544 F3d 696, 707 (CA 6, 2008). Direct evidence is evidence that, if believed, requires a conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Kocak v Community Health Partners of Ohio, Inc*, 400 F3d 466, 470 (CA 6, 2005). Direct evidence must establish not only that the plaintiff's employer was predisposed to discriminate, but also that the employer acted on that predisposition. *Hein v All America Plywood Co, Inc*, 232 F3d 482, 488 (CA 6, 2000).

Plaintiff argues that defendants violated the FMLA by failing to return him to his previous position as a deputy commissioner after his FMLA leave expired, contrary to 29 USC 2614(a)(1) (entitling a person who takes FMLA leave to be returned to his or her former position or an equivalent position), or by retaliating against him for exercising his rights under the FMLA, contrary to 29 USC 2615(a)(2).[4] Plaintiff argues that he suffered an adverse employment action when his appointment as a deputy commissioner was removed and when he was not allowed to use accrued sick leave to reach his 25th work anniversary before retiring.

The submitted evidence showed that plaintiff was permitted to use his full 12 weeks of FMLA leave, which ended in September 2016. At that time, plaintiff could not return to work and requested an additional medical leave of absence. The City took that request under advisement and began the process to determine if plaintiff qualified for a medical leave of absence by asking plaintiff to submit to an IME, which he did. On the basis of that examination, plaintiff was asked to complete a CBC test. Thereafter, plaintiff notified the City of his intention to retire, and for that reason he did not complete the CBC test. Approximately a month later, when plaintiff had not yet formally completed the retirement process, and had also failed to obtain the requested CBC test or return to work, defendants sent letters to plaintiff, dated November 22, 2016, advising him that his appointment as deputy commissioner was being removed and he was considered absent without leave from his position.

There is no evidence to support plaintiff's claim that he suffered an adverse employment action as a result of taking a leave of absence under the FMLA. Specifically, there is no evidence that defendants would not allow plaintiff to return to work at his former position once his FMLA leave expired. Rather, it was plaintiff who sought to extend his leave from work. Further, when the City asked plaintiff to complete an IME in conjunction with his request for a medical leave of absence, and plaintiff was asked to complete a CBC test, it was plaintiff who at that point informed the City that he would be retiring, and therefore, a CBC test was unnecessary. Plaintiff never demonstrated that he was capable of performing the duties of his former position, or an equivalent position, after his FMLA leave expired. See *Cehrs v Northeast Ohio Alzheimer's Research Ctr*, 155 F3d 775, 784-785 (CA 6, 1998) (holding that the plaintiff failed to establish a genuine issue of material fact regarding her FMLA claim when it was undisputed that she was capable of

---

[4] Although plaintiff alleged that his employment was terminated, he did not lose his employment. Rather, appointment as a fire commissioner was withdrawn, which meant that he reverted back to the last position he held. Also, the notice he received about being absent without leave from his employment never went into effect.

performing the duties of her former position when her FMLA leave ended). See also *Woodman*, 254 Mich App at 190.

While the record shows that there were communication problems between plaintiff and defendants regarding when plaintiff wanted to retire and the possible use of sick leave to extend plaintiff's retirement until he accumulated 25 years of service, there simply is no evidence that defendants retaliated against plaintiff because of his earlier FMLA leave. It was plaintiff who initiated the retirement plans and who refused to take the requested CBC test, a requirement for his requested medical leave, on the basis of his intention to retire. Moreover, plaintiff never showed that he was capable of performing the duties of his former position at the end of the FMLA period. Therefore, he cannot prove a violation of the FMLA.

The record also shows that there is no genuine issue of material fact that plaintiff made a voluntary decision to retire. Plaintiff relies on *Schindewolf v City of Brighton*, 107 F Supp 3d 804 (ED Mich, 2015), to argue that his decision to retire was not voluntarily made, and that he was forced to retire because defendants violated the FMLA. In *Schindewolf*, the court addressed whether the plaintiff's claims under the FMLA and the PWDCRA were barred by his resignation, which meant there was no adverse employment action by the defendant. *Id.* at 814-816. The plaintiff argued that he resigned only because he was faced with an ultimatum to either resign or face termination of his employment. *Id.* at 814. The court explained that an involuntary resignation does not prevent a plaintiff from proving that he faced an adverse employment action:

> Defendants also argue that whether or not a constructive discharge occurred is a matter of state law, citing *Weigold v. ABC Appliance Co.*, 105 Fed.Appx. 702, 708 (6th Cir.2004). Yet the Court finds a Sixth Circuit case instructive where it considered whether an employee's resignation was voluntary or involuntary in the context of a claim for disability discrimination under Ohio law and a violation of due process rights under section 1983. "In general, employee resignations are presumed to be voluntary." *Rhoads v. Board of Educ. of Mad River Local Sch. Dist.*, 103 Fed.Appx. 888, 895 (6th Cir.2004). However, "[a]n employee may rebut this presumption by producing evidence indicating that the resignation was involuntarily procured." *Id.*
>
>> Relevant to this inquiry are "(1) whether the employee was given an alternative to resignation, (2) whether the employee understood the nature of the choice [he] was given, (3) whether the employee was given a reasonable time in which to choose, and (4) whether the employee could select the effective date of resignation." The mere fact that an employee is forced to choose between resignation and termination does not alone establish that a subsequent choice to resign is involuntary, provided that the employer had good cause to believe there were grounds for termination. On the other hand, an employee resigns involuntarily if, after being given a choice between resignation and termination, [he] is not granted sufficient time and opportunity to deliberate about the choice.

*Id*. at 895 (citations omitted); *see also Dandridge v. North Am. Fuel Sys. Remanufacturing, LLC*, 2015 WL 1197541, at *5 (W.D.Mich. Mar. 16, 2015) (applying *Rhoads* factors in a similar case, involving claims under FMLA).

The Court also considers Defendants' reliance on *Lagrow v. County of Berrien*, 2008 WL 5197120 (Mich.Ct.App. Dec. 11, 2008), to argue that a "forced choice" does not transform Plaintiff's resignation into an actionable discharge. (Defs.' Mot. Summ. J. 9.) In *Lagrow*, by the plaintiff's account as the non-moving party, she was told by the county administrator that "he was terminating plaintiff's employment with the county, offered plaintiff the opportunity to resign. Plaintiff, not wanting a termination on her record, accepted the opportunity, and submitted a letter, which she described as a 'letter of resignation.' Accordingly, the end of plaintiff's employment with the county was a result of a resignation, not a termination." *Lagrow v. County of Berrien*, 2008 WL 5197120, at *4 (Mich.Ct.App. Dec. 11, 2008). Plaintiff claimed that her resignation was the product of duress, yet the court noted that Plaintiff's boss ended the 9:00 a.m. meeting to reconvene at 9:30 a.m., to allow her time to consider her options and gave her access to an office in which she could use the telephone, where she unsuccessfully attempted to contact an attorney. She submitted a letter of resignation and told her boss that she did not want a termination on her record and she wanted the board of commissioners "to know that she had been required to make a choice between the two options." *Id*. at *5. The court found that she "clearly understood that she had the choice of being terminated or resigning." *Id*.

The Court finds those factors the court considered in *Lagrow* not inconsistent with the factors considered in *Rhoads*. In *Lagrow* the allowance of time (less than a half hour) for the plaintiff to make a decision was among the factors leading the court to conclude that the "plaintiff has presented no evidence suggesting that [her boss], upon informing plaintiff that her employment with the county had come to an end, acted unlawfully and deprived her of the exercise of her free will." *Id*. at *5. Plaintiff's attempt to distinguish *Lagrow* because the plaintiff had specifically requested the opportunity to resign as an alternative to termination, and Mr. Schindewolf did not.

In *Schindewolf*, 107 F Supp 3d at 816, the court held that the plaintiff was not foreclosed from proving his claim merely because he had resigned his position, stating:

Here, the evidence "is not so one-sided that Defendant[s] must prevail as a matter of law." *Dandridge*, 2015 WL 1197541, at *5. The parties do not dispute that it was made clear in the July 23, 2013 meeting that "when the meeting was concluded" Mr. Schindewolf "was no longer going to be working for the City of Brighton" and that he "had the option to resign immediately and he chose to resign." (Foster Dep. 125 and Schindewolf Dep. 102, 108, Defs.' Mot. Summ. J. Exs. 1, 2.) Defendant Foster testified that he concluded the meeting by telling Mr. Schindewolf that if he chose the option to resign, then Defendant Foster would provide him with a letter of reference. (Foster Dep. 167.)

Taken in the light most favorable to the non-moving Plaintiff, the evidence may support a finding that Plaintiff was given an alternative to resigning, which was termination, yet also shows that a decision to terminate Plaintiff had already been made at the time Plaintiff was given this option. There is no indication that Plaintiff did not understand the nature of the choice he was given. Unlike *Lagrow*, Mr. Schindewolf had no time, not even a few minutes, outside of the meeting to consider the options of resigning or being terminated. Additionally, he was not given the choice of a resignation date. *Cf. Rhoads*, 103 Fed.Appx. at 895 (the plaintiff had requested resignation in lieu of termination and was given between 10:00 a.m. and 5:00 p.m. to make her decision; "[a]lthough this time frame was perhaps not as lengthy as [the plaintiff] would have liked, she was not pressured to make her decision immediately or otherwise coerced into making an uninformed judgment.").

Defendants' first argument that Plaintiff cannot establish an adverse employment action because he "resigned" does not alone warrant granting judgment in favor of Defendants on the remaining claims where, considering the evidence in the light most favorable to the non-moving party, there is a material question of fact whether Plaintiff's resignation was voluntary.

This case is factually distinguishable from *Schindewolf*. There is no evidence in this case that plaintiff was presented with a choice between retirement and either demotion or termination. On the contrary, it was plaintiff who initiated the retirement plans in October 2016, in response to the City's request that plaintiff submit to the CBC test. Plaintiff declined to submit to the CBC test, stating that it was unnecessary in light of his plan to retire. It was approximately a month later, when plaintiff still had not followed through with the requested CBC test, that defendants sent plaintiff the letters in November 2016, advising him that his appointment as deputy commissioner was withdrawn and he was considered absent without leave. To the extent that those actions can be considered adverse employment actions, there is no factual support for plaintiff's claim that they forced him to make a choice about his employment future, given that he had already announced his decision to retire well before then. There simply is no genuine issue of material fact regarding whether plaintiff was forced to choose retirement under duress. The facts showed that plaintiff initiated those plans and he was allowed ample time to make a decision about his retirement before the alleged adverse employment decisions were made.

In addition, there is no evidence supporting plaintiff's claim that he was forced to decide between retiring or resigning. He had the option to continue to pursue a medical leave of absence beyond his FMLA leave or request that he be able to use sick leave. Instead of pursuing either option, he submitted his request to retire on October 21, 2016, before defendants made any decision about extending his leave of absence.

Furthermore, even if defendants' actions in November 2016, notifying plaintiff that his appointment as deputy commissioner was withdrawn and he was considered absent without leave, are considered adverse employment actions, there were legitimate, nondiscriminatory reasons for those actions because it is undisputed that plaintiff neither returned to work nor submitted to the requested CBC test, which was necessary for defendants to determine if a medical leave was permissible. Defendants were investigating plaintiff's request for a medical leave of absence as

required by the Human Resources Department's Rule 14(4)(a). When plaintiff stopped cooperating with that investigation, defendants had a legitimate, nondiscriminatory reason for not reinstating him after his FMLA leave period ended and he did not return to work. Plaintiff does not dispute that he failed to return to work and did not obtain the requested CBC test.

It appears there was some confusion stemming largely from plaintiff's initial request for a medical leave of absence, which is different from an employee's use of sick leave to remain off work after FMLA leave expires. While plaintiff asserts that he wanted to use his accumulated sick time rather than seek a medical leave, the letter submitted to defendants from plaintiff's doctor specifically requested "extended medical leave." There is evidence that when plaintiff sought clarification of the differences, the City's Human Resources staff did not promptly respond to plaintiff's inquiries. However, there simply is no evidence that the handling of plaintiff's situation involved discrimination or retaliation related to plaintiff's previous use of FMLA leave, particularly when defendants were expecting plaintiff to return to his position and it was plaintiff, not defendants, who initiated the retirement plans that led to plaintiff's separation.

Accordingly, the trial court erred by denying defendants' motion for summary disposition of plaintiff's FMLA claim.

### III. PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

Defendants also argue that the trial court erred by denying their motion for summary disposition on plaintiff's PWDCRA claim. We agree.

In his complaint, plaintiff alleged that defendants discriminated against him because of his medical disability, contrary to MCL 37.1102. He argued that the City, as a place of public accommodation and an institution providing a public service, had a duty not to deny him the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or service because of his disability. Plaintiff alleged that he was harassed and discriminated against because of his disability. He later clarified that this claim involved his allegation that defendants refused to allow him to use his accumulated sick leave because of his disability.

Defendants emphasized in their motion for summary disposition that plaintiff did not produce any evidence that they denied him the use of his sick leave because he had a disability. Instead of completing the process for approval of his medical leave of absence, plaintiff chose to retire and did not request use of his sick leave. Moreover, he was fully paid for his unused sick leave after his retirement. Defendants also argued that plaintiff could not prove that he had a disability within the meaning of the PWDCRA because he admitted that he was unable to perform the duties of his position, as required by MCL 37.1103(d)(*i*)(A). The trial court denied defendants' motion on this claim without providing any analysis.

MCL 37.1102 provides:

(1) The opportunity to obtain employment, housing, and other real estate and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right.

-8-

(2) Except as otherwise provided in article 2, a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship.

Plaintiff argues that defendants violated MCL 37.1102 by not allowing him to use his sick leave after his FMLA leave expired. He contends that the City, as part of its obligation to accommodate those with disabilities, owed him the right to allow him to use his accumulated sick leave and that defendants discriminated against him by not allowing him to use his accrued leave until he reached 25 years of service. The problem with plaintiff's argument is that MCL 37.1102 represents the Legislature's explanation of the purpose behind the PWDCRA. MCL 37.1102, standing alone, does not set forth a claim for relief under the PWDCRA. Instead, plaintiff must refer to other portions of that act to establish a cause of action under the PWDCRA.

Plaintiff appears to rely on the public accommodation section of the PWDCRA, MCL 37.1301 *et seq.* MCL 37.1301 defines the terms used in that portion of the act:

(a) "Place of public accommodation" means a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

(b) "Public service" means a public facility, department, agency, board, or commission owned, operated, or managed by or on behalf of this state or a subdivision of this state, a county, city, village, township, or independent or regional district in this state or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions or decisions regarding an individual serving a sentence of imprisonment.

MCL 37.1302 sets forth what conduct is prohibited:

Except where permitted by law, a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

(b) Print, circulate, post, mail, or otherwise cause to be published a statement, advertisement, or sign which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service will be refused, withheld from, or denied an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges,

advantages, or accommodations or because of the use by an individual of adaptive devices or aids, or that an individual's patronage of or presence at a place of public accommodation is objectionable, unwelcome, unacceptable, or undesirable because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

A disability under this portion of the PWDCRA does not require evidence that the plaintiff can perform the duties of his employment. Compare MCL 37.1103(d)(*i*)(A) and MCL 37.1103(d)(*i*)(B).

In *Gazette v City of Pontiac*, 212 Mich App 162, 167-168; 536 NW2d 854 (1995), this Court addressed this type of claim under the former Handicappers' Civil Rights Act (HCRA), stating:

> Article 3 of the HCRA prohibits the denial of access to public accommodations or public services because of a handicap. In order to establish a prima facie case of discrimination under Article 3, a plaintiff must allege that (1) he is "handicapped" as defined in the statute, (2) the handicap is unrelated to his ability to utilize and benefit from a place of public accommodation or public service, and (3) he has been discriminated against in one of the ways set forth in the statute. MCL 37.1103(e)(*i*)(B) . . . ; MCL 37.1302 . . . ; *Miller v Detroit*, 185 Mich App 789, 792, 462 NW2d 856 (1990).

Plaintiff is correct that the City, specifically its Fire Department, qualifies as a public service. See *Gazette*, 212 Mich App at 169. As a place of public service, the City cannot discriminate with regard to the services offered to individuals. See *Haynes v Neshewat*, 477 Mich 29, 37-39; 729 NW2d 488 (2007). However, plaintiff presented no evidence that he was denied the use of his sick leave because of a disability. As previously discussed, the City was evaluating plaintiff's request for a medical leave of absence when plaintiff decided to retire. Because plaintiff chose to end the process for obtaining a medical leave of absence before a decision was made on that request, there is no support for his claim that he was denied the right to use sick leave due to his disability. Accordingly, the trial court erred by denying defendant's motion for summary disposition of plaintiff's PWDCRA claim.

## IV. PUBLIC POLICY

Defendants also argue that the trial court erred by denying their motion for summary disposition with respect to plaintiff's claim regarding a public-policy violation. We also agree.

In Count IV of his complaint, plaintiff alleged that defendants violated the public policy of Michigan by denying "[p]laintiff's right to utilize accumulated and available sick time; and/or [p]laintiff's right to explore and seek to retire from his employment." He alleged that defendants discharged him because he was seeking to use available sick time and exploring retirement. Defendants argued in their motion for summary disposition that plaintiff did not establish a prima facie case for violation of this state's public policy because this theory applies only to at-will

employment, subject to certain exceptions, none of which were demonstrated by plaintiff, who also was not an at-will employee.

"Michigan law generally presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). An exception to the at-will employment doctrine exists " 'based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable.' " *Id.*, quoting *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982). "Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Suchodolski*, 412 Mich at 695. There are three "public policy" exceptions to the general rule of at-will employment. An employer may not terminate an employee for "exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law." *Landin*, 305 Mich App at 526.

Our Supreme Court has applied the public-policy exception for wrongful-discharge claims only in at-will employment relationships. See also *Phillips v Butterball Farms Co, Inc (After Second Remand)*, 448 Mich 239; 531 NW2d 144 (1995); *Clifford v Cactus Drilling Corp*, 419 Mich 356, 360; 353 NW2d 469 (1984). The trial court agreed with defendants that pursuant to MCL 38.514,[5] plaintiff, a firefighter, was a just-cause employee. In light of that statute, plaintiff has not shown that he was an at-will employee such that a public-policy exception can be applied to his employment. Further, MCL 38.514 does not address any right to use accumulated sick leave. Not only was plaintiff not an at-will employee, he also made the decision to retire before his earlier request for medical leave was resolved. Accordingly, there is no factual basis for establishing a claim involving termination of plaintiff's employment for reasons that violate public policy.

To the extent that plaintiff's appointment as deputy fire commissioner was at will, plaintiff also has not shown that his removal from that position violated any public-policy based exception to the general rule of at-will employment. Plaintiff failed to communicate with Jones's office and, in any event, that removal occurred approximately a month after plaintiff announced his intention to retire. Moreover, there was no evidence that Jones was aware of plaintiff's medical leave

---

[5] MCL 38.514 provides, in relevant part:

> The tenure of each person holding an office, place, position, or employment under this act shall be only during good behavior and efficient service, and any person may be removed or discharged, suspended without pay, and deprived of vacation privileges or other special privileges by the civil service commission for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment to the public, neglect of duty, a violation of this act or of the rules of the commission, or for any other failure of good behavior, or for any other acts of misfeasance, malfeasance, or nonfeasance in office. However, a member of any fire . . . department encompassed by this act shall not be removed, discharged, reduced in rank or pay, suspended, or otherwise punished except for cause, and in no event until he or she has been furnished with a written statement of the charges and the reasons for the actions . . ..

request after the FMLA leave expired. There was no evidence supporting an inference that plaintiff was removed from his deputy commissioner position for exercising any right guaranteed by law, executing a duty required by law, or refraining from violating the law. Thus, plaintiff did not show that his removal as deputy commissioner was for reasons contrary to public policy.

Plaintiff appears to alternatively argue that he had a property interest in his right to accrued sick leave, citing *Ramsey v Bd of Ed of Whitley Co*, 844 F2d 1268 (CA 6, 1988). In that case, a school board reduced a teacher's accumulated sick leave days, which reduced her compensation for sick leave days when she retired. The Sixth Circuit Court of Appeals agreed that the plaintiff had a property right in accumulated sick leave based on a state statute and the defendant's recording of accumulated sick leave on the plaintiff's sick leave cards. *Id*. at 1272. The court concluded, however, that she could not proceed with her action under 42 USC 1983 because "an interference with a property interest in a pure benefit of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983." *Id.* at 1274-1275. There is no dispute that plaintiff had an interest in accumulated sick leave, but plaintiff does not explain how this interest supports a public-policy claim, especially where it is undisputed that plaintiff was fully paid for his unused sick leave upon his retirement.

Accordingly, the trial court erred by failing to dismiss plaintiff's claim that defendants violated public policy with regard to plaintiff's decision to leave his position with the City.

## V. 42 USC 1983

Defendants also argue that the trial court erred by not dismissing plaintiff's 42 USC 1983 claim against defendant Jones. We agree.

Defendants argued in their motion for summary disposition that plaintiff failed to present evidence to show that similarly situated nondisabled employees were treated differently or that he was denied the right to use sick leave because of his alleged disability. For the same reasons that plaintiff's claim under the PWDCRA failed, his claim under 42 USC 1983 could not succeed. Plaintiff also failed to establish that a custom, policy, or practice of the City was the moving force behind an alleged violation of his constitutional rights.

Plaintiff responded that defendants were liable under 42 USC 1983 for not providing the proper supervision and training to prevent the type of unlawful, discriminatory behavior that occurred, and that there was no rational basis for plaintiff to be treated differently because of his disability. He argued that defendants could not articulate any rational basis for denying him the right to use his accumulated sick days and for his subsequent termination from employment, although plaintiff did not lose his position with the Fire Department, but only was removed from his appointment as a fire commissioner.

At the hearing on defendant's motion, plaintiff changed or clarified his argument. There, he argued that Jones was the person who sent the letter informing him that he was being treated as absent without leave because he did not complete the process for a medical leave, even though Kemia Crosson, the City's Human Resources representative, signed the letter and she testified that she sent it. Plaintiff argued that because Crosson worked on behalf of the Fire Department and

-12-

her office was near Jones's office, Jones must have been involved in the decision, conveyed by Crosson, to require plaintiff to submit to an IME and to deny plaintiff's request to use his sick days.

The trial court dismissed plaintiff's claim under 42 USC 1983 against the City, but not Jones, stating:

> Right, and as I was beginning to say, and I don't know if I completed my thought, that taking the evidence in a light most favorable to the nonmoving party, as it relates to the claim against Mr. Jones, the Court finds that there is a viable claim that should be submitted to the trier of fact on the 14th Amendment, based on the US—42 USC 1983, however, the Court doesn't find that it's—there's a viable claim against the City of Detroit. So, that is it's granted as to the City of Detroit only.

To pursue a claim under 42 USC 1983, a plaintiff must prove a violation of a federal constitutional right. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 196; 761 NW2d 293 (2008). Plaintiff appears to argue that he was the victim of discrimination with regard to his disability and his request to use sick leave to extend his service time before he retired, contrary to the Equal Protection Clause of the Fourteenth Amendment.

As previously discussed, while plaintiff was disabled from work and was seeking approval for a medical leave of absence, he chose to retire instead of completing the process for obtaining approval of his medical leave request. Plaintiff made the request to use sick leave *after* he had already requested to retire. Because plaintiff made the decision to retire before any decision could be made on his request for a medical leave, and before he made any request to use sick leave, there is no evidence that his disability was a factor in the decision not to allow him to use sick days.

Moreover, in *Payton v Detroit*, 211 Mich App 375, 402-403; 536 NW2d 233 (1995), this Court explained that additional evidence is required to prove a claim under 42 USC 1983 against a supervisor:

> With regard to defendant Hart, as a supervisory official, his liability under §1983 must be based on more than his right to control employees. *Bellamy v Bradley*, 729 F2d 416, 421 (CA6, 1984). A supervisory official's liability under §1983 cannot be based solely on the theory of respondeat superior. *Id*. In order for plaintiff to hold Hart liable for violations of his civil rights,
>
> > [t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. [*Id*.]
>
> For example, in *Smith v Heath*, 691 F2d 220 (CA 6, 1982), a police supervisory officer was liable under § 1983 because he, as the officer in charge of

-13-

the investigation, was directly responsible for and personally participated in the unconstitutional search of the plaintiff's home.

In this case, Hart was not directly involved in the investigation or prosecution of plaintiff. At trial, plaintiff's evidence showed that defendant Hale informed Hart of plaintiff's arrest and confessions. However, this evidence is insufficient to support a finding that Hart authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct of Hale, Ridling, and the other Squad 7 officers. Accordingly, plaintiff's judgment against Hart under § 1983 is reversed and the case is remanded for entry of a judgment in favor of defendant Hart.

Plaintiff did not produce evidence to support a claim under 42 USC 1983 against Jones. This claim involves plaintiff's argument that he was not allowed to use sick leave to extend his service time so that he would reach 25 years of service before he retired. There is no evidence that Jones had any involvement in handling the request for sick leave or how his pension was calculated. Those matters were handled by Human Resources and the Pension Board. Although plaintiff argues that Crosson's office was near Jones's office, that is not enough to show that Jones had any involvement in plaintiff's request to use sick leave to extend his years of service. Thus, plaintiff has not shown that he has a claim against Jones under 42 USC 1983. Accordingly, we reverse the trial court's decision denying summary disposition of this claim with respect to Jones.

Reversed and remanded.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michelle M. Rick